F. A. HUBBARD v. MONTGOMERY COUNTY, Appellant.

**County Bridge:** APPROACH: EVIDENCE. The filling at the end of a county bridge, whether of dirt or other material, necessary to enable travelers to pass from the same to the roadway may properly be considered an approach, which the county should maintain in safe condition. Evidence held to support a finding that the filling at the end of the bridge in question constituted the approach and part of the bridge, rather than a portion of the highway.

**Same:** DEFECTIVE APPROACH: QUESTION OF FACT. The question · of whether holes in the approach to a bridge, as disclosed by the evidence in the instant case, constituted defects rendering the same unsafe was for the jury.

**Same:** NEGLIGENCE: PROXIMATE CAUSE. Where plaintiff's horses stepped into a hole in the approach to a bridge and were frightened thereby, throwing plaintiff from his buggy and causing his injury, the the defective approach was the proximate cause of his injury, although it might not have happened had his horses not been restive.

**Contributory Negligence:** INSTRUCTION. The court is not required to specifically instruct regarding each item of evidence bearing upon the question of contributory negligence, especially where the evidence is not such as to require it and no request therefor is made, but a general instruction on the subject is sufficient.

**Personal Injury:** DAMAGES: INSTRUCTION. Where it is clear that a specific claim for time lost, in a personal injury action, had reference to loss already sustained, an instruction permitting recovery for future loss of time resulting from the injury, under a general claim for personal injuries, was proper.

**Examination of Witnesses:** IMPEACHMENT. It is not competent to cross-examine a party as to statements made regarding collateral matters for the purpose of contradicting his answer.

**Evidence:** ADMISSIONS. The anxiety of the plaintiff in a personal injury action to suppress the fact that he received accident insurance is not an admission of any fact material to the case.

**Evidence:** INCONSISTENT CLAIMS. The statement of an injury made to an insurance company, though not including a claim for permanent injuries, is not of necessity inconsistent with a claim therefor in an action for negligence; since the claimant was bound to disclose to the insurance company only those facts entitling him to recover the insurance.

*Appeal from Mills District Court.*—HON. A. B. THORNELL, Judge.

WEDNESDAY, DECEMBER 16, 1908.

ACTION to recover damages for personal injuries alleged to have resulted from defects in a county bridge negligently maintained by the defendant. There was a verdict for the plaintiff, and from the judgment thereon defendant appeals.—*Affirmed.*

*J. M. Junkin,* for appellant.

*Beeson & Ratcliff, Genung & Genung,* and *Shirley Gillilland,* for appellee.

MCCLAIN, J.—There was evidence tending to show that on September 2, 1905, plaintiff, a rural mail carrier, driving from north to south across the McNeil bridge, in the defendant county, with a team of horses and a buggy, engaged in making his daily round, was thrown from his buggy and severely injured as the result of one of his horses stepping into a hole in the road at the south end of the bridge and becoming frightened so that the team got beyond plaintiff's control.

I. Appellant's chief contention is that the defective condition in the roadway, if any, at the south end of the bridge, where plaintiff testifies his horse stepped into the hole, was in the highway, and not in the approach to the bridge, and that therefore the county was not liable, under the rule prevailing in this State that a county is liable only for negligence in maintaining what are called county bridges and the approaches thereto. It appears that when the bridge was built the south end abutted upon the bank of the ravine over which it was constructed, and was about a foot and a half higher than the level of the ground; that for the purpose of constructing the bridge a trench four or five feet deep and three or four feet in width was dug at the end of the bridge, which subsequently was filled in with dirt under the direction of the county bridge superintendent; that water going towards the bridge along the highway from the south sometimes washed holes in this dirt filling next to the bridge; and that such holes had existed for some time prior to the date of the accident. We think that the construction, whether of plank, stone, dirt or other material, necessary to enable persons using the bridge to pass from it to the roadway at either end, may properly be considered an approach to the bridge, which the county should maintain in a safe condition, and that therefore the jury might properly find that the filling at the south end of this bridge, in which holes were washed by the water, was such an approach to the bridge as that it was the duty of the county to maintain it in a safe condition. *Eginoire v. Union County,* 112 Iowa, 558; *Moreland v. Mitchell County,* 40 Iowa, 394; *Nims v. Boone County,* 66 Iowa, 272; *Miller v. Boone County,* 95 Iowa, 6. The question whether the portion of the roadway in which the holes existed constituted the approach to the bridge, or a portion of the highway only leading to the bridge, was left to the jury under an instruction of which

*Marginal note:* 1. COUNTY BRIDGE: approach: evidence.

no complaint is made, and we think that beyond question the evidence is such as to support the finding of the jury that it was the approach to the bridge, and not a portion of the highway.

II.   It is further contended for appellant that the evidence does not show a defective condition of the approach, but it appears without question that there were

2. SAME: defective approach: question of fact.

holes next to the bridge on each side of the roadway, and it was for the jury to say, under instructions which are not complained of, whether these holes did constitute defects rendering the approach unsafe.  We should not be justified in holding as a matter of law that there was no negligence on the part of the county in allowing the approach to remain in the condition shown by the evidence.

III.   Plaintiff's testimony as to how the accident happened is commented upon for the purpose of showing that it is not to be believed, in view of certain declarations

3. SAME: negligence: proximate cause.

of plaintiff, made soon after the accident to witnesses who testified for the defendant; but at best, the evidence as to these declarations raised only a conflict for the determination of the jury.  It may be that, as stated by plaintiff in these declarations, the horses were restless on account of the attacks of flies, and that if they had not been thus irritated they might have avoided the holes, and no accident would have happened; but if the approach was in a dangerous condition, and by reason of causes not due to any fault of plaintiff the horses stumbled into these holes and were frightened, then the defect would be the efficient cause of the accident, and the defendant would be liable for the resulting injury.  Something is said in this connection as to the breaking of the tongue of plaintiff's buggy; but if the tongue was broken as the result of fright on the part of the horses after stumbling into one of the holes in the approach to the bridge, and the plaintiff was thereby thrown

from his buggy and injured, the injury could properly be attributed by the jury to the defect in the approach as the original and proximate cause.

IV. In this connection, however, it is claimed that the court erred in not properly instructing the jury with regard to alleged contributory negligence of plaintiff, in

4. CONTRIBUTORY NEGLIGENCE: instruction.

that no mention was made of an item of evidence tending as claimed to show that the accident resulted from a defective tongue which broke and thus occasioned the accident. In the instruction complained of the jury was directed to take into account plaintiff's knowledge of the defect in the approach if shown, the disposition of his team, and like matters. We think, however, there was no occasion in this instruction to refer to the question whether plaintiff was negligent in having a defective tongue in his buggy, for there was no evidence tending to show that the buggy tongue was so insufficient that it was negligence on the part of plaintiff to be driving along the highway with the tongue in such condition. The only scrap of evidence on the subject was the statement of one witness, who testified that the plaintiff said the horse kicked over the tongue and broke it, and that the tongue was nearly broken out before. It is not contended that there was not a sufficient general instruction as to contributory negligence, nor that the jury could not have found for the defendant on the ground that the plaintiff was negligent in having an unsafe buggy if the jury had reached that conclusion under the evidence submitted. The sole contention in this respect is that the alleged defect in the buggy tongue should have been referred to specifically in the instruction in connection with other matters to which the attention of the jury was specially called; but plainly the court was not bound to refer to every item of evidence which the jury might properly consider in reaching the conclusion as to plaintiff's contributory negligence, and, as already suggested, the evidence did not tend to show that

the tongue was so defective as to render it improper for the plaintiff to proceed along the highway with his buggy in the condition described. If the buggy tongue, although impaired in strength, was reasonably sufficient for use on a highway in ordinarily safe condition, then the plaintiff was not negligent in using his buggy in that condition, and, if it was unsafe for plaintiff to use it in that condition, then the jury could and undoubtedly would have so found under the instructions; but we think the evidence was not such as to require a specific reference to the question whether the buggy tongue was reasonably sufficient. If the counsel for defendant thought the matter of sufficient importance to justify a specific instruction, some instruction on the subject should have been asked.

V. In presenting his claim to the county, plaintiff itemized his damages and asked for "loss of time and doctor bill, $50," and for "personal injuries, $5,000." The court so instructed the jury as that they might allow for injuries of a permanent character affecting plaintiff's future earning capacity in addition to any allowance they might make for loss of time, limiting the amount, however, which might be allowed for each item, so that it should not exceed the amount claimed in the notice given to the county. In this there was no error. It is plain that the loss of time referred to was that already suffered at the time of the giving of the notice, and that any subsequent loss of time resulting from the injury would properly be included under the head of impairment of future earning capacity, and properly described as "personal injury."

*5. PERSONAL INJURY: damages: instruction.*

VI. It appears that plaintiff had some form of accident insurance, and for the injury on account of which this suit is brought made claim against the accident company for fourteen days' partial disability. On cross-examination of plaintiff as a witness in his own behalf, he was asked by counsel for

*6. EXAMINATION OF WITNESSES: impeachment.*

defendant whether he remembered telling one Will Fortune, after he was hurt, that he did not want Fortune to say anything about his getting accident insurance for fear it would hurt him in his claim against the county, and denied making any such statement. Counsel for defendant called Fortune as a witness, and asked him what plaintiff had said with reference to his keeping still about the accident insurance, and an objection to questions of this character was sustained. Counsel for defendant offered to show that plaintiff said to the witness that disclosure of the fact of receiving accident insurance might injure or prejudice his claim against the county, and it is now insisted that the ruling of the court excluding this evidence was erroneous. We fail to discover any purpose for which the proposed testimony was admissible. It was not competent to ask the plaintiff on cross-examination with reference to a statement about a collateral matter for the purpose of contradicting his answer. *Deer v. Bagley,* 80 Iowa, 197; *Swanson v. French,* 92 Iowa, 695.

The request made by plaintiff, if shown, would not have constituted an admission of any fact material to the case. Counsel urges upon our attention inconsistency between the statement made in the application

7. EVIDENCE: admissions.

for payment under the accident insurance that he had only suffered partial disability, and the claim now made of permanent disability; but the testimony which Fortune was asked to give had no reference to the nature of the claim made against the accident company, and referred only to plaintiff's anxiety to have the fact of the recovery of accident insurance suppressed. No error is assigned with regard to the admission of the statement to the accident company.

VII. It is also urged with much earnestness that the statement to the accident company tended strongly to impeach the fairness of plaintiff's claim for permanent injuries, and this, with other evidence as to declarations which wit-

nesses for defendant testified to as made by plaintiff soon

after the accident, is relied upon as show-

**8. EVIDENCE:**
**inconsistent**
**claims.**

ing that plaintiff's claim is false. The state-
ment itself is not inconsistent with plain-
tiff's right of recovery in this action. It does not appear
that he did not recover from the accident company the
entire amount which he was entitled to recover under his
insurance contract, and he was not bound to disclose in
that statement any other facts than those which he was re-
lying upon as entitling him to an accident benefit, and,
in general, without setting out the evidence in detail, we
find on an examination of the record no inconsistency
between plaintiff's claims as to his injuries and the evi-
dence as to his statements to witnesses after the injury
which would warrant us in holding that as a matter of
law he was not entitled to recover for permanent injuries.
The case was properly submitted to the jury in every
respect, and we have no occasion to interfere with the
verdict.

Finding no error in the record, the judgment is
*affirmed.*