OF THE

## STATE OF IOWA

AT

### DES MOINES, JANUARY TERM, 1916

AND IN THE SIXTY-NINTH YEAR OF THE STATE.

---

ALICE A. WOREZ, Appellant, v. DES MOINES CITY RAILWAY CO., Appellee.

EVIDENCE: Memoranda—Conditions of Admissibility. Memoranda
1 made by a disinterested witness in the performance of his duty
and known by him to have been correct when made, and con-
taining statements of fact material to the issue on trial, are sub-
stantive evidence on said issue, along with the witness's oral
testimony in relation thereto. So *held* in a personal injury action,
wherein memoranda made by a medical examiner on plaintiff's
application for insurance were received as bearing on plaintiff's
state of health prior to the accident in question.

EVIDENCE: Best and Secondary Evidence—Signed and Unsigned
2 Memoranda. The rule that only the best evidence of which a
cause is susceptible is admissible is not violated by the reception

in evidence of an unsigned memorandum, made by a disinterested witness in performance of his duty, and containing statements material to an issue on trial, even though it appears that there exists, or at one time did exist, in another state, a duplicate of said memorandum, signed by the party against whom the unsigned memorandum is offered.

**EVIDENCE:** Best and Secondary Evidence—Evidence Beyond Jurisdiction of Court. Secondary evidence is admissible of the contents of a writing when the original (assuming, *arguendo*, it to be such) is beyond the jurisdiction of the party offering it and not within his control.

**EVIDENCE:** Relevancy, Materiality and Competency—Logical Connection. Evidence, to be relevant, must have some logical connection with or relation to a fact in issue, so as to assist in getting at the truth of it.

PRINCIPLE APPLIED: Plaintiff claimed that her injuries were due solely to a certain accident. Defendant countered with testimony that, prior to said accident, plaintiff, on an application for insurance, stated that she had had rheumatism, etc., and that the examiner had written such statement in the application which plaintiff signed, after which he sent the same to the company in a distant state, and also wrote said statement in a duplicate application which was unsigned. The signed statement was not produced; the unsigned one was presented and received in evidence. Plaintiff testified that she never made any such statement. *Held*, whether the unsigned statement was a correct copy of the signed statement was not relevant to the issue *whether plaintiff had ever made such statement.*

**TRIAL:** Conduct of Court—Observation as to Witness's Knowledge. The appellate court will not hypercritically analyze every remark of the trial court in passing on the admission or rejection of evidence, and assume that the jury must have understood that the court was reflecting on the witness's former testimony on the point in question. So *held* where the court, in rejecting offered testimony, expressed his inability to understand how the witness could have knowledge on a certain point.

**APPEAL AND ERROR:** Harmless Error—Properly Excluding Evidence on Poor Objection. If *excluded* evidence is subject to a good objection, it is immaterial that the court excluded it on a poor objection.

**EVIDENCE:** Relevancy, Materiality and Competency—Personal Injury—Expert Testimony. Testimony as to the ailment from which a plaintiff was suffering at a time prior to the accident

for which recovery is sought may be competently given by a physician who examined her at such prior time, and such testimony may be relevant and material on the issue whether her present condition is due solely to the accident in question.

EVIDENCE: Relevancy, Competency and Materiality—Attendant Incidents. When a fact is relevant, competent and material, then the further incidents which lead up to, explain and are a part of such fact are admissible.

PRINCIPLE APPLIED: Plaintiff claimed that her physical condition was due solely to a certain accident. Defendant countered with a showing that plaintiff was sick long prior to the said accident, in that plaintiff (a) consulted an agent of a lodge of which she was a member as to the lodge's paying sick benefits, and (b) later sent word to the lodge that she was unable to pay the lodge dues *owing to sickness;* and that the lodge paid the said dues. *Held,* proper.

APPEAL AND ERROR: Review—Estoppel. One may not predicate error on the reception of evidence offered by himself.

WITNESSES: Impeachment—Contradiction—Competency of Evidence. A contract between plaintiff and an attorney, wherein the attorney agreed to prosecute an action for damages for a certain injury, is competent to impeach the testimony of plaintiff ''that she had never made any claim for damages for said injury.''

EVIDENCE: Relevancy, Competency and Materiality—Personal Injury—Former Sickness and Injury. Under the claim that a present physical condition is due solely to a certain accident, any evidence which challenges such claim is relevant, competent and material—for instance, evidence of former sickness or injury or attempts to recover therefor.

APPEAL AND ERROR: Assignment of Error—Omnibus Assignments. Whether the court erred in limiting the reception of certain evidence to a certain purpose is not raised by an assignment ''that the court erred in its rulings excluding plaintiff's evidence upon defendant's objections.''

DAMAGES: Personal Injuries—Expenditures. There can be no recovery in an action for personal injuries, for expense incurred for physicians, nurse or other expenditures, in the absence of evidence showing the reasonable necessity therefor and the reasonable value thereof.

APPEAL AND ERROR: Reversal—Trifling Deficiency in Verdict. Causes will not be reversed for a trifling deficiency in the amount which might have been allowed—$5 in present case.

**HUSBAND AND WIFE:** Wife's Separate Business—Loss of Time, Etc.—Definiteness Required. A married woman seeking to recover for loss of time, services, or inability to perform labor or earn money, on the claim that she is engaged in a business of her own, must segregate and make reasonably certain the items of loss for which she may recover from the items for which she may not recover.

**DAMAGES:** Profits—Recovery—Keeping Boarding House. In an action for personal injuries resulting in an alleged loss of time, services, and inability to perform labor or earn money, the possible *profits* of keeping a boarding house are not an element of recovery.

**PLEADING:** Prayer—Designatio Unius Exclusio Alterius. A prayer for relief, resting on distinctly enumerated elements of loss, excludes all other elements of loss. Therefore, where plaintiff pleaded that she sustained injuries (a) to certain muscles, (b) to her spinal column, all resulting in great physical and mental pain, and prayed for a recovery of $12,000, *held*, said pleading covered no claim for ''loss of time or services or inability to perform labor or earn money,'' or expenditures of any kind.

**CARRIERS:** Carriage of Passengers—Negligence—Instructions. An instruction that the law imposes upon a carrier of passengers an obligation to exercise the highest degree of care to avoid injuries to passengers that is reasonably practicable under the circumstances existing at the time and consistent with the proper and practical management of its affairs, but that the carrier is not an insurer of absolute safety, is not subject to the vice of making the mere *convenience* of the carrier a vital consideration.

**CARRIERS:** Carriage of Passengers—Negligence—Stopping and Starting of Cars—Instructions. The claim of negligence in starting a car cannot be sustained, if the evidence shows that it was started in a prudent and careful manner, and after the passenger had had reasonable time to enter the car while it stood still.

**NEGLIGENCE:** Instructions—Erroneous Instructions—Harmless Error. A misdirection as to what will constitute negligence on the part of defendant is entirely harmless when the jury returns a verdict for plaintiff, and thereby necessarily finds that defendant was negligent.

**TRIAL:** Instructions—Erroneous But Harmless Instruction—Psychological Effect on Verdict. Where the jury returned a verdict for plaintiff, in spite of the fact that, by an erroneous instruction, the court gave defendant an unjustifiable chance to escape,

error may not be predicated, on appeal, because of the inadequacy of the verdict, on the subtle argument that such erroneous instruction had a bad psychological effect on the amount of the verdict.

**DAMAGES:** Pain and Suffering—Future Pain—Permanency of Injuries—Instructions. An instruction allowing a recovery for future pain only in case the injuries from which the pain comes are *permanent,* is erroneous.

**APPEAL AND ERROR:** Parties Entitled to Allege Error—Error on Non-Issue. A plaintiff may not complain of an instruction which erroneously limits his right to recover on an issue *not made by the pleading* and *not mutually tried out by the parties.* So *held* where the court erroneously instructed as to the recovery for future pain, no such issue appearing in the record.

**PLEADING:** Issue, Proof and Variance—Issue Without Written Plea—Waiver. One may not be said to have mutually agreed with his adversary to try out an issue not raised in the written pleadings, by failing to object to evidence which, though bearing on and tending to prove such non-paper issue, was also admissible on other issues which the written pleadings did raise.

PRINCIPLE APPLIED: Plaintiff, in an action for personal injury, did not, in the written pleadings, raise any issue as to pain and suffering *in the future;* i. e., later than the time of trial. She did plead that she was permanently injured; that she was injured in certain muscles, in her spinal column, and "has suffered almost constant physical pain and severe mental anguish since she was injured." Evidence was received, *without objection by defendant,* tending to show what injuries she had sustained and what her suffering had been up to the time of trial. This necessarily bore also on her non-paper claim that she would suffer subsequently to trial. But *held* that, inasmuch as such evidence was clearly admissible on the written issues, failure to object could not work a waiver of the right to demand written plea of *"future pain."*

**PLEADING:** Issue, Proof and Variance—Personal Injury—Future Pain—Sufficiency of Pleading. Pain and suffering subsequent to time of trial must be specifically pleaded, if such pain and suffering do not naturally follow proof of that which is pleaded; and the lapse of a long time between the filing of petition and date of trial may have material bearing on the question. Pleadings reviewed, and *held* not to count on such pain and suffering later than the time of trial.

PRINCIPLE APPLIED: Petition was filed April 25, 1912, in which plaintiff pleaded that she was painfully and permanently

injured on December 7, 1911; that she was injured in the mus-
cles and ligaments of her leg; that her spinal column was in-
jured, with results, at times, resembling paralysis; and that "she
has suffered *almost constant* physical pain and severe mental an-
guish since she was injured." The trial was had on March 1,
1913. The issue of permanent injury and pain and suffering down
to time of trial was submitted. The verdict was for $200, from which
plaintiff appealed because inadequate. *Held*, the claim that suf-
fering would continue for more than practically a year could not
be naturally deduced from what was pleaded, and therefore the
pleading raised no issue as to suffering subsequent to trial. (The
court says: "The point is close; but affirmance, rather than rever-
sal, has the benefit of reasonable doubt.")

**PLEADING:** Construction—Future Pain—Conditions Surrounding
26 **Trial and Verdict.** On the question whether a pleading counts
on future pain and suffering, i. e., later than time of trial, the
appellate court will give material consideration to the condi-
tions surrounding the trial, including the time elapsing from
the date of injury to date of trial, and the smallness of the
verdict which the lower court held to be justified by the evidence.

*Appeal from Polk District Court.*—CHARLES A. DUDLEY,
Judge.

WEDNESDAY, MARCH 15, 1916.

SUIT for personal injuries. Verdict for plaintiff. Plaintiff
appeals, claiming that the verdict is inadequate.—*Affirmed.*

*O. M. Brockett* and *John McLennan*, for appellant.

*Parker, Parrish & Miller* and *A. G. Rippey*, for appellee.

SALINGER, J.—I. The witness Lambert testified that, in
the fall of 1910, he took the application of plaintiff for sick-
ness and accident insurance; that the application was taken
in duplicate; that plaintiff signed one and not
the other; that the signed application was
transmitted to the insurer in the state of New
York, and that witness does not know where
it now is. The witness produced the unsigned duplicate, and
it is known in this record as Exhibit 1. It is written therein

1. EVIDENCE:
memoranda:
conditions of
admissibility.

that applicant had in the past had "acute attacks of rheumatism at times, but not severe." The witness says that these words are in his writing; that, when he prepared the blank, the plaintiff, as witness recalls, said that she had had at times attacks of rheumatism; that he made this written statement from what plaintiff said just before he made it, and wrote down her statement correctly as plaintiff stated it. Thereupon, defendant offered Exhibit 1 in connection with the testimony of this witness, so far as it relates to said statement. We have to determine whether objections made to this testimony, and to this exhibit, that same are incompetent, immaterial and not the best evidence, were rightly overruled. We shall not attempt to follow the counsel into all the ramifications of their dispute on this point, but hold that the objections are not well made, because:

1.   The testimony and the introduction of the paper was no attempt to prove by secondary evidence the contents of the signed paper sent to New York. It is all merely the equivalent of (1) testimony that plaintiff made statements as to the condition of her health prior to the accident in suit, and that the witness, at the time the statement was made, correctly reduced it to a written memorandum; and (2) thereupon introducing said memorandum. In a general way, it is the equivalent of a memorandum made by a disinterested person before any controversy arose, which he knows he made truly at the time when he made it, because he remembers what was said, and his thereupon testifying, independently of the writing, what was said. Neither the oral testimony nor the admission of this memorandum violated any rule as to best, or as to primary and secondary evidence. All was merely a method of showing what oral statements plaintiff had made as to her bodily condition at a time before the acts of defendant injured her.

2.   On any theory, the testimony was not objectionable, because the original was outside of the jurisdiction and in the

2. EVIDENCE: best and secondary evidence: signed and unsigned memoranda.

state of New York, and not under the control of the party offering it, and because the party who had

**3. EVIDENCE: best and secondary evidence: evidence beyond jurisdiction of court.** the original is not a party to the suit.

As we read it, the text in 17 Cyc. 527, militates against, rather than helps, the position of appellant. It declares fairly that, where a paper is out of the jurisdiction, the ordinary rules as to secondary evidence do not govern. *Hawkins v. Rice,* 40 Iowa 435, merely holds that a written assignment cannot be established by parol upon a showing that the instrument had been sent to the clerk for record and not returned, because such assignment is still constructively in the possession of the assignee; and *Grimes v. Simpson Centenary College,* 42 Iowa, at 590, applies said ordinary rules because there was no positive and direct evidence showing where it was or who had the contract at the time of the trial, or that it was lost or mislaid. We think *Adams v. Coulliard,* 102 Mass. 167, 173, squarely sustains the trial court.

*Kennell v. Boyer,* 144 Iowa, at 306, is that memoranda made in a transaction where the maker acts as agent for both parties are admissible. *Donovan v. Boston & M. R. Co.,* (Mass.) 33 N. E. 583, 584, holds memoranda are admissible where there is no reasonable possibility that they were intentionally made incorrect; where made by one acting in the line of duty and in the usual course of employment, under conditions which tended to make the entry correct; made before any controversy had arisen, and when all concerned had no interest other than to know and state the truth. According to *Inhabitants of Townsend v. Inhabitants of Pepperell,* 99 Mass. 40, on issue of the insanity of a patient during a certain period, a record of his condition and treatment as a patient in a hospital, produced at a trial 40 years after its date by the superintendent of the hospital as part of a series of records of which he is the official custodian, purporting to be contemporaneously made by the attending physicians, and which it is their duty to make, is admissible in evidence as a foundation for the

opinion of an expert whether it indicates mental disease of the patient, without identifying the person who made it. *State v. Brady,* 100 Iowa 191, 200, decides that, in a prosecution for embezzlement from a railroad corporation, memoranda consisting of the records of its ticket office, showing daily sales there during a given year, should be admitted, where it is conceded that the agent could not know from memory the facts stated in the memorandum, and are admissible as substantive evidence under the same circumstances as if a witness said he knew they were true when made, but had no independent recollection either before or after examining them as to the sales to which they refer. In *Graham v. Dillon,* 144 Iowa 82, we hold that, if a witness can testify that at or about the time a memorandum or entry was made he knew its contents, and knew it to be true, his testimony and the memorandum are both competent evidence, although the witness cannot testify to the facts as a matter of independent recollection, even after his memory has been refreshed. And see *Edwards v. City of Cedar Rapids,* 138 Iowa, at 423, 424.

II. As we view it, the only material testimony given by the witness Lambert was that the duplicate, Exhibit 1, truly states something which the plaintiff told the witness. Plaintiff was allowed to contradict this by stating that she was never, in fact, afflicted with rheumatism, and that she did not tell him that she had suffered acute attacks of rheumatism, but that they were not severe ones. It is complained that she was not also permitted to say that the duplicate was not a true copy of the signed application. Whether it was or not is material and relevant to nothing before the court when this testimony was excluded. Whether the signed application sent to New York did or did not contain this statement as to rheumatism had no bearing on whether such declaration as the witness wrote into the duplicate was made. That witness made this written memorandum in but one paper, rather than in two, did not affect the material portions of his testimony.

4. EVIDENCE: relevancy, materiality and competency: logical connection.

2.

In sustaining objection to this, the judge said that he did not know how the plaintiff may know whether this statement is contained in the original, the original not being in court. We do not agree to the claim that this
5. TRIAL: conduct of court: observation as to witness's knowledge.
not only excluded the proposed testimony but discredited and destroyed evidence put in earlier. That the court thought that the witness might not be able to say from memory whether the duplicate was a copy of the other did not indicate to the jury that she could not be able to remember whether or not she ever made a statement that she had had acute attacks of rheumatism. At any rate, there is neither error point nor brief point which complains of this alleged misconduct of the trial judge. The objection presented to us is that this testimony was excluded, and not the manner in which it was excluded.

3.

We see no force in the argument that, even though this evidence might rightfully have been excluded on rebuttal because it was not rebuttal, or was a repetition, it was error
6. APPEAL AND ERROR: harmless error: properly excluding evidence on poor objection.
to exclude it on the objection made that it was not the best evidence. In the first place, testimony that a paper before the court is not a true copy of one not before the court *is* vulnerable to the objection of not being the best evidence. Moreover, while, where complaint is made of the *overruling* of an objection, the trial ruling will not be disturbed unless objection covering the point was made, this rule of appellate review is based on the thought that, if specific objection had been made below, the ruling might have been different, and no occasion to appeal have arisen. This is not the rule where the sustaining of an objection is complained of. Where for any

reason it was right to sustain the objection, the ruling will not be disturbed because it was made without the presentation of sufficient argument, or without apprehension of the true reason for making it. *In re Will of Crissick,* 174 Iowa 397.

III.    Complaint is made of overruling the plaintiff's objection to evidence of Dr. Lambert, which was to the effect that plaintiff was brought to his office in March, 1910, about one year and nine months before accident in

7. EVIDENCE: relevancy, materiality and competency: personal injury: expert testimony.

suit; that she then completed a claim for some accident that she had had; that she said she had fallen down a stairway and hurt her shoulder, and that no one saw this accident, and that Lambert was of opinion that the trouble was due to a rheumatic disease of the shoulder. The assignment refers us to lines 18 to 32, page 50, of abstract. There we find that Lambert does say that plaintiff was then brought to his office to complete a claim for some accident that she had had; that she said she had fallen down a stairway and hurt her shoulder, and that no one saw this accident; and that he made an examination of the shoulder at that time. We also find that no objection whatever was made to this. But there was this, more:

"Q.    What was your opinion at that time as to what was ailing that woman's shoulder? (Objected to as incompetent, irrelevant and immaterial to any issue in this case. Overruled. Exception.) A. I was of the opinion that the trouble was due to a rheumatic disease of the shoulder."

This testimony is not incompetent, because it appears that witness was a practicing physician of at least 10 years' experience. It is not irrelevant and immaterial to any issue in the case, because it is relevant to the inquiry whether injury to health or body shown on this trial was wholly due to the accident sued for or wholly or partly to something that occurred before this accident.

2.

Upon examining the abstract as referred to in another assignment, we find this as to witness Bonner:

8. EVIDENCE: relevancy, competency and materiality: attendant incidents. "Q. Do you remember of her coming to you as an agent of this company and making any claim with reference to sick benefits in August, 1907? (Objected to as irrelevant, immaterial and incompetent. Overruled. Exception.) A. She did not come to me; she sent for me. Q. What conversation did you have with her relative to her physical condition? (Same objection, ruling and exception.) A. That was about eight years ago. She was having some trouble. She sent to me to ask me whether our company allowed any sick benefits. I had a long conversation with her. She and her husband were members. Later, she sent word to the lodge that her husband and she were unable to pay their dues on account of sickness. Q. Were the dues remitted? (Objected to as not the best evidence, hearsay, incompetent and irrelevant. Objection overruled.)"

To this last ruling, no exception was taken. The answer is that, while in strictness the dues were not remitted, the local lodge paid them.

Eliminating what is not excepted to, this is testimony amounting, in effect, to a statement that before the accident the plaintiff was sick. The inquiry as to the allowance of sick benefits and all the rest of it leads up to, is part of, and told the jury of, this previous sickness. It is neither irrelevant, immaterial nor incompetent. Plaintiff exhibited herself before the jury; she testified to physical conditions which she claims resulted from the car accident. Anything was material, relevant and competent which tended to challenge that conditions found existing at the trial were due in whole or in part to the car accident. Any previous illness is relevant to that inquiry. Any admission that involves being sick before this accident, and any inquiry made before that accident as to

whether sick benefits were obtainable, and obtaining same, either prove such illness or tend to.

## 3.

There is no error point which complains of admitting testimony as to an earlier injury of the plaintiff by a gasoline explosion, but there is a brief point that does. Waiving whether this is sufficient to entitle the point to consideration here, we have to say that some of this testimony was given by the plaintiff herself on redirect, without objection, and some of it against the objections of the defendant. Appellant can scarcely complain of the reception of this testimony, whatever appellee might have urged, if appealing. Aside from this, the testimony was relevant on whether the physical condition urged as a basis of recovery was wholly due to the act of the defendant, or in whole or in part due to the earlier injury.

9. APPEAL AND ERROR: review: estoppel.

## 4.

A paper known in the record as Exhibit 2½ is an alleged written contract between plaintiff and a lawyer, one Carson, of date June 8, 1907. It contains a statement that Carson is to prosecute an action for damages on account of personal injuries caused by said explosion. The plaintiff, in effect, denied the making of such contract, or the authorizing suit for said injury. Carson was permitted, in effect, to say that the contract was made and the suit authorized. The contract was admitted "for the purpose of going to the fact that a suit of that character in which the question of her physical condition was considered." The rulings permitting plaintiff and Carson thus to testify, and admitting the contract, are without error. When all is said, it appears clearly that this entire examination and the introduction of the

10. WITNESSES: impeachment: contradiction: competency of evidence.

contract went: (1) to contradict and impeach the plaintiff in her statement that she had made no formal claim for, nor instituted a suit to recover, damages for said physical injury; and (2) to show, by way of admission, that, earlier than the car accident, plaintiff had suffered injuries which might account, at least in part, for the condition which she attributed wholly to the negligent acts of this defendant. It was all admissible for that limited purpose, and was admitted for no more than that. Moreover, the petition in the case was offered by plaintiff, with a statement that there was no objection to the part of the petition with reference to her physical condition, and the court ruled that same would be admitted for the sole purpose of showing the physical condition of plaintiff.

**11. EVIDENCE: relevancy, competency and materiality: personal injury: former sickness and injury.**

### 5.

Plaintiff offered petitions in which she sought divorce from her husband. Defendant objected, "except to that part which relates to her health," and the court ruled that it would be received for the purpose of "showing the condition of her health and no other." To this the plaintiff excepted. We fail to see what plaintiff has to complain of. Moreover, we do not find that this is complained of on this appeal in any way except (1) by the general statement in error point 9 that the court erred "in its rulings excluding plaintiff's evidence upon defendant's objections and in admitting evidence for defendant against plaintiff's objection, specified particularly in the statement of facts and in the argument in support of this claim," (2) by the statement in error point 10 that the court erred in overruling plaintiff's motion for a new trial, and (3) by brief point 9, that sufficient is shown "in support of the foregoing propositions to demonstrate that plaintiff's motion for a new trial should have

**12. APPEAL AND ERROR: assignment of error: omnibus assignments.**

been granted.'' The motion for a new trial deals with the exclusion of evidence in like general terms, and, finally, everything in that motion which is not specifically assigned upon and argued seems to be abandoned by the statement in argument that:

''As the motion for new trial was particularly grounded upon the errors we have hereinbefore argued, argument of errors in overruling it would involve repetition which could hardly be helpful. So far as is applicable, and we believe all of it is, we refer to what has already been said and adopt it as our argument in support of our assignment against the order denying new trial.''

IV. Plaintiff was asked what amount she had paid out for medicine or medicines for her use by prescription or advice of doctors since she was injured, and answered: ''I cannot say definitely just exactly how much I have paid out, but it has been quite a little sum;'' that she bought everything on the calendar that the doctors prescribed to help her; that it has cost her considerable; but that she hadn't exactly made out an itemized bill of it for the 16 months; and that, in her best judgment, not overestimating, ''I expect about $10 or $15;'' and that the money she recalled then as having been paid to a doctor or doctors was $5 paid Dr. Ely for his examination.

13. **Damages:** personal injuries: expenditures.

Governing ourselves by the abstract for the appellee, we find that the testimony on medical service and the like, and objections thereto, were as follows: Plaintiff said the ''next'' doctor she had was Grimes; he never presented his bill and she does not know what it is; knows what the bills of some of the doctors are—Grimes, Vest and Duhigg. Dr. Grimes charged ''us'' $2 a visit; she thinks she owes Dr. Grimes $8. This was stricken out as wholly immaterial ''and no foundation laid showing what the amount of the bill was,'' and plaintiff excepted. She was then asked, ''What is your best judgment as to whether Dr. Grimes rendered you a state-

ment," and she answered that she thought it was $8. Defendant moved to strike this answer, and plaintiff's counsel, in effect, withdrew the question, by the statement, "I don't think you understand my question. Did Dr. Grimes render you a statement for the amount due him?" to which she answered that he did. She continued that she asked Dr. Grimes to come once, and she called at his office about three or four times, and that she knew whether the bill of $8 which he rendered was a reasonable bill for his services. She was then asked: "Q. Now, you may state whether or not it was a reasonable bill." On the objection of defendant that the question assumed there had been a bill handed to her, that the bill itself would be the best evidence of what it was, and that it is not shown that witness knows the usual charge of physicians in this city, whether it is reasonable or unreasonable, the court said: "I hardly think this witness to be qualified to answer as to the reasonableness of this bill." The plaintiff excepted, but added, "We will withdraw that for the present; there is another way of getting that here." The witness then continued that Dr. Carpenter made seven visits at her home to see her; that she visited Dr. Duhigg's office approximately five or six times; that the latter called at her home once; that he has rendered her a statement; that she has never paid him; and that she knows what the amount of the statement was; and she changed her testimony as to the calls at Grimes' office from about three or four times to four or five times.

We find no error point nor brief point complaining of the rulings on taking evidence as to outlays for medical services, but do find an assignment that the court erred in instructing that nothing could be allowed "for any expense incurred for physicians or nurses or expenditures of any kind," which is credited to Instruction 16, but is found in Instruction 15. We are of opinion that, as we must hold that there was no error in taking this testimony, no instruction was warranted allowing a recovery for such expense.

14. APPEAL AND ERROR: reversal: trifling deficiency in verdict.

There is certainly no evidence to justify an allowance for "expenses incurred for nurses or expenditures of any kind," and the evidence fails to show that there was "any expense incurred for physicians." Certainly there is none as to how much was expended or justly and reasonably due, except the item of $5 paid Dr. Ely. We should not reverse in order that this trifling sum might be allowed, if there were evidence that it was a reasonable expenditure; and there is no such evidence.

In *Elzig v. Bales*, 135 Iowa 208, 215, we held it was error to allow recovery for part of the amount paid out for medicines, without any showing that these were prescribed by physicians or necessary, or that the amount paid was the reasonable value thereof.

### 2.

It is urged that a married woman engaged in an occupation on her own account has a right of action for tort resulting in injury to her business or to her earning capacity, and that, therefore, it was error to exclude certain evidence, and to charge that nothing should be allowed for loss of time, services or inability to perform labor or earn money. The statement of law is sound, but the record discloses that such law was not disobeyed, and that there is no error available to appellant. There is no evidence which even attempts to segregate the personal earnings of plaintiff in keeping boarders, or her loss of earnings as a detective. There is no way of knowing how much she lost on these accounts, separated from other claims of loss. See *In re Trusteeship of Clark*, 174 Iowa 449. There is no attempt to show any loss of earnings as a detective, either separately or mingled with other items.

15. Husband and wife: wife's separate business: loss of time, etc.: definiteness required.

Plaintiff testified that prior to this injury she had the

occupation or business of keeping boarders at her home; that she just gave them table board because she didn't have a very large house; that after the injury she continued to keep and provide for those boarders personally and herself, and for five months, but with the assistance of help. On objection.

16. Damages:
profits: recovery: keeping boarding
house.

to the question as to what help she had hired to do work which she had done theretofore herself, the court indicated that this was not a proper measure of damages, although he would let counsel proceed. Counsel responded that he was anxious to get a suggestion if he could, and then excepted to this "ruling of the court." The witness then continued that at the time she was injured she had from two to seven boarders; that before her injury she did all in cooking, serving and otherwise providing for these boarders, except that she had the help of a student in washing dishes; that she did the cooking, buying, mostly waited on the tables, and kept her house in order; and that after her injury she did none of these things, except that she "managed it for the rest of them to know what to do when I was not able to be up, and when I wasn't they came to me to ask." She said that she did not do any of the physical or manual work for about three months, sat around and did what she could sitting down. She stated that she knew what her earning capacity was by the week or by the month "in money that (she) earned in keeping boarders as (she had) stated at the time (she was) injured." She was then asked to say if she knew what her "average weekly earnings from the keeping of boarders that (she) kept was (per week) up to and at the time that (she) received the injuries," and was not permitted to do so. What plaintiff attempted to put in evidence is clearly labeled by the colloquy concerning it. On objection being made to this last question, the court intimated a doubt whether profits of a business could be considered, and asked counsel to state what he considered the measure of damages. The answer was counsel thought "that the amount that the plaintiff made

and saved, if she knows, as the profits from her work and the food that she served her boarders, the net result would be a fair measure of damage for the injury which she sustained by being unable to produce that service." Being then asked what the claim would be if she made no profits, counsel responded that then there would be nothing lost; that would be a matter that they (the jury) could go into; that if there was nothing made, then "of course, we have got nothing to claim." Counsel added that he thought the running of a boarding house is a legitimate business, the same as any other, and, if its proprietor is capable of earning in that way "net over all other expenditures $50 a week, we ought to have a right to show that just to the same extent" as if that amount were earned by her in a store or any other employment, and that counsel knew of no other way of determining what damage she has sustained. Thereupon, the court said: "That is the thing that is troubling me, is to get away from this theory of capital, etc., which must be involved in this matter. At the present, I will sustain that objection because it don't seem to me that that is the proper measure of damages." And plaintiff excepted.

In this state of the evidence, it could not be error to charge that the verdict should not include compensation for loss of time, or services, or inability to perform labor or earn money. There was no evidence upon which to award such compensation, and, at best, nothing from which the jury could determine how much money had been' thus lost. If there be error, it is not in thus charging, but in the rulings that kept the evidence in this condition. On fair consideration, it *is*, however, clear that plaintiff proffered all the evidence she proposed to put in—some evidence as to profits. She made no attempt to prove the personal labor necessarily used or money expenditures required to carry on this business, nor to prove the ultimate point—how much the gross earnings would exceed the value of the personal service plus the gross expenditures. But the court indicated that such

proof would have been rejected if offered. Consequently, the question is squarely whether it was error not to let possible profits of keeping a boarding house enter into awarding compensation for personal injuries. We believe that, in principle, *Homan v. Franklin County*, 90 Iowa 185, 191, sustains the refusal. In that case, we hold that considering profits has never been extended to injuries to the ability to conduct a farm, and we ground it on the statement that "the profits of a farm depend upon many contingencies other than the personal services of the owner." While the *Homan* case deals with the profits of conducting a farm, and here are involved the profits of conducting a boarding house, any distinction based on such difference in the business would be a distinction without a difference.

3.

Upon decision of a question of pleading and practice depends whether there is not a still more conclusive reason for sustaining what was done as to outlays and as to profits.

17. PLEADING: prayer: *designatio unius est exclusio alterius.*

An amendment to petition was stricken. It covered both of said items. If striking it was right, and if the original petition which this amendment attempted to aid as to these two items does not cover said items, then there was no claim in pleading for same. We are relieved from determining whether it was error to strike the amendment because plaintiff insists that all its evidence was admissible under the petition without amendment. No disposition of an amendment which works no change in the allegations of the original is assignable error. (*City of Topeka v. Sherwood*, (Kas.) 18 Pac. 933.) Thus we reach whether, on the original petition, plaintiff was entitled to have submitted to the jury "loss of time or services or inability to perform labor, or money, or any expense incurred for physicians or nurses or expenditures of any kind," or loss of profits. The petition specifically

declares that plaintiff was injured in certain muscles and ligaments, sustained injuries to the spinal column, which she cannot fully describe except to say that she experiences much physical pain and suffering, and at times symptoms of paralysis, and that she has suffered almost constant physical pain and severe and annoying mental anguish since she was injured. This is followed with the statement "and all to her great damage in the sum of $12,000." The prayer is:

"Wherefore, plaintiff prays that she may have and recover judgment against defendant in the amount of $12,000."

We think it beyond all argument that the claim for damages in this petition is exclusive in the sense that the only thing charged to have caused the damage, and the only thing for which the amount claimed is prayed, are the specific things enumerated as causing the damage, and as being the reason for the prayer. The decision on the point is controlled by the rule of *ejusdem generis,* and of *designatio unius est exclusio alterius.* The demand for relief rests upon distinctly enumerated things, and it excludes all others.

V. Complaint of Instruction 6 and of No. 8 are related. No. 6 is said to charge, and erroneously, that the duty to plaintiff was such degree of care and foresight to prevent injury as was practical in the operation of defendant's street car system. Such effect can be given the instruction only by segregating one phrase which it uses. Fairly construed, it does not make the mere convenience of defendant a vital consideration. It is: (1) That the law imposes upon this defendant an obligation to exercise the highest degree of care to avoid accident and injury to its passengers that is reasonably practicable under the circumstances and conditions existing at the time and place in question, and consistent with the proper and practical management of its affairs; (2) that this does not mean that the defendant is an insurer

18. CARRIERS: carriage of passengers: negligence: instructions.

against accident or an insurer of absolute safety, "but simply that it is required to use the highest degree of care and foresight reasonably consistent with the practical operation of its street car system, in order to prevent injury to its passengers." Its keynote is that the carrier must use the highest degree of care to avoid accident and injury to passengers. All else is merely explanatory of such duty, and the instruction as a whole is that, though the operators of a street car system do owe passengers the highest degree of care to avoid accident and injury, it is still true, and the passenger must be held to understand, that absolute immunity from accidental injury may be had only by not running the street cars. All possibilities of injuring a passenger from the moving of a street car may be avoided by not permitting him to enter a car, or by keeping the car at a standstill. While this would be, indeed, the highest degree of care to avoid accident and injury to passengers, it is a degree of care that is not required, because its exercise would, as the instruction puts it, not be reasonably consistent with the practical operation of the street car system. We think that this is what the instruction should be held to charge.

### 2.

It is said that Instruction 8 charges, and erroneously, that defendant could not be found guilty of negligence if the evidence showed that, in the exercise of reasonable care, plaintiff might have entered the car in safety before the accident occurred. It charges that it is the duty of defendant, after a car has come to a standstill, to allow what is, under the circumstances, a reasonable and proper time to enable the passenger, in the exercise of reasonable and ordinary care on his part, to board the car in safety before starting it; that, if the car was started in an

19. CARRIERS: carriage of passengers: negligence: stopping and starting of cabs: instructions.

improper manner, and without due warning, and threw the plaintiff on the platform, it would warrant finding that defendant was negligent; but that, if it is shown that plaintiff had a reasonable and proper time, in view of all the circumstances, to enable her, in the exercise of reasonable and ordinary care, to enter the vestibule of the car in safety before the car started, in a careful and prudent manner, the jury would not be warranted in finding that defendant was guilty of the negligence charged. This assignment, too, rests on segregating words to suit the argument; and segregation even does not show error in the instruction. The defendant cannot be guilty of injurying the plaintiff by negligent starting of its car, if it started the same in a prudent and careful manner, and after the plaintiff had had reasonable time to enter the same while it stood still. In effect, it is the theory of this assignment that defendant would be negligent unless it stopped the street car for an hour, if an intending passenger desired that much time to board it, and if, after it starts the car prudently and carefully, and has given the passenger every reasonable opportunity to board the same before it starts, such passenger is injured by boarding the car after it has started.

To the criticism of both instructions, the following language in *Markey v. Chicago, M. & St. P. R. Co.*, 171 Iowa 255, 268, is quite applicable:

"But negligence in law is not made out by failure to employ absolute care. The erection of high walls on both sides of a railroad track, and employing effective guards at every crossing, would practically prevent the injuring of trespassers. But the absence of such walls and guards does not establish actionable negligence. And the law of negligence is, for all practical purposes, a set of rules defining how far absolute care may be departed from, without liability. Negligence is not failure to do all possible, but failure to do what ordinary prudence dictates."

3.

Neither can we agree with the contention of the appellant that these two instructions, 6 and 8, are prejudicial, even if erroneous. Suppose that they did misdirect the jury as to what constituted negligence on the part of the

20. NEGLIGENCE: instructions: erroneous instructions: harmless error.

defendant, or constituted contributory negligence committed in improper boarding of the car. To allow plaintiff a single dollar, the jury was compelled to find that the

defendant had been negligent, and that the plaintiff had not contributed to her own injury. The alleged error was not prejudicial, because there was a verdict for plaintiff.

4.

As to the argument that misdirecting the jury on what entitled the plaintiff to recover at all had an adverse "psychological" effect on the amount of the verdict, we can but say that, were it sound, it is yet too subtle to be-

21. TRIAL: instructions: erroneous but harmless instruction: psychological effect on verdict.

come a rule of appellate review. When the court tells the jury that in certain conditions it should allow the plaintiff nothing, and yet it makes an allowance, there seems to be no

logical connection between that action and a feeling that because of such action the verdict should be made small. The finding is that the conditions which the charge requires for a recovery exist. Just how so finding has a tendency to reduce the recovery, we are unable to see.

VI. There is complaint of certain limitations upon recovery beyond the time of the trial for consequences of the injuries sustained. Instruction 13 says that the plaintiff claims in her petition that the injuries com-

22. DAMAGES: pain and suffering: future pain: permanency of injuries: instructions.

plained of by her are permanent, and that she will in the future suffer, permanently, pain therefrom; so that she has the burden of proof on these allegations, and, "unless the

plaintiff has proved by a preponderance of the evidence that the injuries of which she complains are permanent, or that the plaintiff will in the future suffer pain substantially as alleged from the injuries of which she complains, then, and in such event, you are instructed that you cannot allow the plaintiff anything for and on account of the alleged claim of the permanency of the said injuries or the alleged fact that she will suffer, permanently, pain in the future;'' and No. 15 adds that, if the injuries sustained by plaintiff are permanent, then there may be added an allowance for any damages "that the plaintiff will be reasonably certain to sustain by reason of pain and suffering in the future, as the direct and proximate result of said injuries.'' Appellee suggests that damages *should* be allowed where there is permanent future pain and suffering on account of permanent injuries, and that, as no terms of exclusion are used, we have the case of instructions which are correct as far as they go, and that no error can be assigned because they did not go further, because appellant asked no instruction on the point. We think that this is untenable, and that the instructions plainly direct, not merely that a recovery may be had for permanent future pain and suffering due to and for permanent injuries, but that such injuries and pain and suffering may not be compensated unless the one is permanent or the pain caused thereby is. The charge is erroneous. *Fry v. Dubuque & S. W. R. Co.,* 45 Iowa 416, 417; *Achey v. City of Marion,* 126 Iowa 47; *Ankrum v. City of Marshalltown,* 105 Iowa 493. For one thing, it rules that, if injuries received be cured, say, five years after they had been sustained, suffering due to the injuries and endured during these five years could not be recovered for, because it was not caused by permanent injuries.

## 2.

But the question remains whether this error may be complained of by the appellant. Though we were to disagree with

the claim of appellee that there was not enough evidence to take future suffering to the jury, still if, despite the assumption in the instruction that it does, the petition does not cover time beyond the trial, the error is not available to appellant, unless there was a volunteer issue tried as to suffering within this time. If such future consequences are not within the issues, plaintiff could recover nothing on their account. If that be the record, she got more than was her due. Being entitled to nothing, she has no cause for complaint because the jury was allowed to give her something, but on conditions which were not justified in the case of one who had a right to recover. There can be no undue limitation of the right to recover as to a party who has no right at all. Whether reversal is due depends, then, upon: (1) Whether there was such volunteer issue; (2) whether the petition is what the court assumed it to be.

**23.** APPEAL AND ERROR: parties entitled to allege error: error on non-issue.

### 3.

The parties may try out questions not mooted in the pleadings and create issues distinct from the pleadings by mutual agreement, and, where this occurs, the court cannot be sustained in a charge which is erroneous upon the evidence thus put in, merely because there is no paper issue for such evidence. But, of course, there can be no volunteer issue unless by waiver or otherwise there be that which amounts to a consent to waive formal plea. Such waiver is often created by failure to object to testimony outside of the paper issue. But to this there is the necessary limitation that such failure to object is not such consent, if the evidence put in, while it tends to prove what is not in the pleadings, is also relevant to what is pleaded. The evidence from which the jury might have found that plaintiff would suffer at a time later than the trial also tended to show what injuries she had

**24.** PLEADING: issue, proof and variance: issue without written plea: waiver.

sustained, and what her suffering had been up to the time of the trial. The plaintiff had the right to put in this evidence. It was so manifestly relevant to the pleadings that it should not have been objected to, and failure to object to it, therefore, affords no reason why its effect should not thereafter be limited to being addressed to the issues made in the pleadings. See *Ankrum v. City,* 105 Iowa, at 496; 31 Cyc. 681; *Achey v. City,* 126 Iowa 47. Rightly construed and limited to its record, *Bruce v. Town of Eldon,* 122 Iowa 92, 93, is not to the contrary.

### 4.

What of the allegations of the petition? It begins with the statement that, on December 7, 1911, "plaintiff was painfully and, as she believes and so alleges, permanently injured."

25. PLEADING: issue, proof and variance: personal injury: future pain: sufficiency of pleading.

The only other allegation relevant to the point in consideration is that plaintiff "was injured in the muscles and ligaments of her left leg, sustained injuries to the spinal column, whose exact nature and character she cannot fully describe, except to say that she experiences much physical pain and suffering, and at times symptoms of paralysis, and that she has suffered almost constant physical pain and severe and annoying mental anguish since she was thus injured." Damages because of permanent injury may be eliminated from consideration. Such are pleaded, but the court did not exclude recovery therefor and charged that they should be compensated if proved. And so of pain and suffering between the injury and the time of trial. Recovery for that was permitted. The inquiry narrows to whether the petition counts on "pain and suffering in the future;" i. e., later than the time of trial.

Where the evidence tends to show that plaintiff has suffered severe pain right up to the time of the trial, and that she had not then yet fully recovered from the injury, future pain and suffering may rightly be submitted. *Bruce v.*

*Town of Eldon,* 122 Iowa, at 93. But, according to *Elzig v. Bales,* 135 Iowa, at 214, it is not enough that the future suffering or expenses may be possible or barely probable; it must be shown that suffering in future is reasonably certain. Nothing which must follow if matter pleaded be true need be specially pleaded. *Gronan v. Kukkuck,* 59 Iowa 18, 20; *Ousley v. Hampe,* 128 Iowa 675, 677. So the inquiry narrows still more, and is, since suffering up to the time of trial is allowed for, whether the petition states that from which it must follow that there will be suffering later than the time of the trial. The injury occurred on December 7, 1911. The petition was filed April 25, 1912. Its allegations are in the past and the present tense, and are, therefore, so far as terms go, limited to time up to April 25, 1912. *McCormick v. Blossom,* 40 Iowa 256. The trial was had about the first of March, 1913. In the last analysis, the question is whether declaring, on April 25, 1912, that one then experiences much physical pain and suffering and has suffered almost constant physical pain and severe and annoying mental anguish ever since December preceding, is a statement from which a claim that there will be such suffering for longer than substantially a year thereafter may be naturally deduced. We seem to have no exact precedent to apply. In *Westercamp v. Brooks,* 115 Iowa 159, 162, the plea was stronger, the petition alleging that plaintiff received " 'serious and permanent injuries; that he will be in the future incapacitated from working or earning wages; that in the treatment of said injuries plaintiff has expended the sum of $41 for doctor bills, and he will in the future incur additional doctor bills by reason of said injury,' " and it sought recovery " 'for doctor bills as aforesaid, and for loss of time as aforesaid, and for his permanent injuries.' " We held that there was sufficient allegation to justify submitting physical pain and mental anguish suffered and such as plaintiff will suffer in the future by reason of his injuries. 115 Iowa 161. In *Evans v. Elwood,* 123 Iowa 92, 96, we find a petition sufficient for basing submission of future suffering.

But it differs from the petition here in that it avers "that by reason of his injuries he has ever since the assault continually suffered, and still suffers, pain;" the allegation here being "almost constant." In *Shultz v. Griffith,* 103 Iowa 150, 154, the petition is weaker, in that it declares merely that the suffering has continued for a long time, but does not say that it continued to the time of filing petition. The allegation is that "plaintiff became sick, sore and lame, and suffered great bodily and mental pain and anguish, and continued to suffer for a long time thereafter; that plaintiff has suffered great pain and loss of time, and was put to great expense." We hold that these allegations are all in the past tense, "and do not even inferentially allege or claim damages for future pain or anguish," and that upon this it was error to instruct the jury to consider future pain and anguish in assessing damages, especially since, though plaintiff testified to his condition up to and at the time of the trial, there was no evidence to show, and his physician was not asked, whether the condition would continue and whether the injuries were such as to cause future pain or anguish.

As a first impression, the point is close, but affirmance, rather than reversal, has the benefit of reasonable doubt. Even if this be passed, the doubt does justify resort to surrounding conditions that bear on what the pleader intended. The evidence for the plaintiff was addressed to her plea. It was interpreted by her proof. The jury that heard it and the counterproof awarded $200 for the injuries *and* the suffering during some 18 months. The trial judge ruled on motion for new trial that the verdict is justified by the evidence. The suffering for a year and a half, and up to the time of the trial which is adequately compensated by the difference between the amount due for the injuries themselves and $200 is not suffering of a character which makes it reasonably certain that it will continue long beyond 18 months after injury.

26. PLEADING: construction: future pain: conditions surrounding trial and verdict.

VII. What has been said as well disposes of the claim that "the damages awarded are grossly inadequate as matter of law." We cannot say that more should have been allowed.

*Migliaccio v. Smith Fuel Co.*, 151 Iowa 705, 708, does not hold that the damages awarded here are, as matter of law, grossly inadequate. The exact holding is that, where the deceased had an expectancy of over 30 years, was a steady worker, earned $1.80 a day, an award of less than $50 was so absurdly inadequate as that there clearly was no abuse of discretion in the trial court's grant of a new trial on this ground alone.

We are unable to see how *Hubbard v. Montgomery County*, 140 Iowa 520, bears on the propriety of admitting evidence as to previous attacks of rheumatism, the contract with Carson and as to getting sick benefits. And *Swanson v. French*, 92 Iowa 695, 699, is authority for no more than that, when testimony has been erroneously admitted, prejudice will be presumed. And *Puth v. Zimbleman*, 99 Iowa 641, merely holds that objection to a letter, stating that same is incompetent and immaterial because it was not binding on defendant, will not permit the objector to insist on appeal that same was erroneously admitted because it was written after intercourse.

The judgment below should stand affirmed.—*Affirmed.*

EVANS, C. J., LADD and GAYNOR, JJ., concur.