GWYNN v. DUFFIELD ET AL.

1: Negligence: ACTION FOR: CONTRIBUTORY NEGLIGENCE: BURDEN OF PROOF: INSTRUCTIONS. Before one can recover for an injury on the ground of negligence, he must affirmatively establish his own freedom from contributory negligence; and the instructions in this case, (see opinion,) *held* erroneous, because they did not clearly state the law as to the burden of proof in this respect.

2. ———: OF PARTNER IN MATTER OUTSIDE OF FIRM BUSINESS: OTHER PARTNER NOT LIABLE. Defendants were partners engaged in the business of apothecaries. If it be admitted that one of them was negligent in permitting plaintiff to help himself, without paying for it, to a dose of medicine, which proved not to be the medicine intended, but a poison, from which plaintiff became sick, yet, as giving away medicines was not a part of the firm business, the other partner would not be liable for such negligence, and an instruction to the contrary in this case, (see opinion,) *held* erroneous.

3. Instructions: MUST PRESENT BOTH SIDES OF THE CASE. Instructions which precluded the defendants' theory of the case, which was supported by evidence which the jury might have believed, *held* erroneous.

4. Negligence of Owner of Property: LIABILITY TO TRESPASSER. A person trespassing upon the property of another cannot recover for an injury sustained through the negligence of the owner in respect to such property, unless the negligence is wanton, or evinces an indifference to the safety of others. See authorities cited in opinion. The rule applied to a case where one, intending to help himself to a dose of medicine at a drug store, through mistake took poison.

BECK, CH. J., from his view as to the effect of the evidence, *dissenting*.

*Appeal from Montgomery Circuit Court.*

WEDNESDAY, SEPTEMBER 23.

ACTION to recover for an injury alleged to have been sustained through the negligence of the defendants in giving the plaintiff a large and improper dose of *belladonna.* There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendants appeal.

*Hepburn & Thummel* and *James McCabe,* for appellants.

*Clark & Parslow* and *C. S. Keenan,* for appellee.

ADAMS, J.—This case is before us upon a second appeal. The former decision is reported in 61 Iowa, 64. The facts as now presented are nearly the same as before. It is not important that we should undertake to point out specially the difference. We will say, in a general way, that the evidence shows that the defendants, H. P. Duffield and S. B. Duffield, were partners in business as apothecaries; that the plaintiff went into their store and called for the extract of dandelion; that S. B. Duffield undertook to put up for him a quantity of the drug called for; that in doing so he made a mistake, and put up the extract of *belladonna,* and delivered the same to the plaintiff; that none of the drug, however, thus put up and delivered was swallowed by the plaintiff, and it is not claimed that any liability arose by reason of such sale and delivery; that the dose which produced the injury was not put up by the defendants, or either of them, nor was it delivered by the defendants, or either of them, to the plaintiff; that the plaintiff helped himself to the same from a jar standing upon the defendants' counter; that the jar had been taken from the shelf by S. B. Duffield and placed upon the counter, and the drug put up was taken from that jar, by him, under the mistaken supposition that it was the

extract of dandelion. So far the evidence is clear, and there is no ground for controversy. But it is not quite clear whether S. B. Duffield said or did anything by reason of which he became responsible to the plaintiff for the character of the drug taken and swallowed by him, nor whether, if he did, the plaintiff was guilty of contributory negligence.

The plaintiff's testimony in regard to the transaction in which the injury was received is as follows: After speaking of the drug which he ordered of S. B. Duffield, and which he paid him for, he said: "As he was doing it up, I said, ' I feel bad now, and believe I will take a dose of that here,' and reached out like I would take a dose out of the box, (being a small box in which he was putting up the drug.) He had got the lid on, and rather, I suppose, than take the lid off the box, he motioned towards the jar and said, ' Take it out of that.' I had out my knife, and reached over and took out about as much as I had been in the habit of taking, and asked him if that was too much, and he smiled and said, ' No, that will not hurt you; you might take more than that and it would not hurt you.' I took it on the point of my knife and put it in my mouth."

The testimony of S. B. Duffield in relation to the transaction is in these words: " The first that I saw or knew of Gwynn's taking any of it was when he was in the act of doing so. I have no recollection of his speaking to me about it. I gave him no permission to take it, and did not sanction it."

The foregoing statement in respect to the evidence is sufficient to enable us to consider certain instructions given by the court, of which the defendants complain.

I. The first complaint made is that the jury was not properly charged in regard to the burden of proof respecting contributory negligence, and we have to say that it appears to us that the position is well taken. Possibly a jury might infer, from such an instruction as was given, that the burden was upon the plaintiff to prove that he was not guilty

1. NEGLI-
GENCE: action for : contributory negligence: burden of proof: instructions.

of contributory negligence; but it seems hardly probable that they would. The plaintiff alleged, as was proper, that he was not guilty of contributory negligence, and the court instructed the jury that "the burden of proof rests upon the plaintiff to sustain his cause of action by a preponderance of evidence." •But is freedom from contributory negligence on the part of the plaintiff a part of his cause of action, or a mere condition of a right of recovery? and, if the former, is it probable that the jury so understood it? Manifestly they were left in great darkness upon this point. While we say this, it is possible that we might not feel justified in reversing upon this ground alone. The instruction is correct as far as it goes, and where such is the case the party who feels aggrieved should ask an instruction for the purpose of supplementing it, and should not, perhaps, ordinarily be heard to complain if he fails to do so.

But the court gave an instruction from which an inference might be drawn that the burden was not on the plaintiff to show freedom from contributory negligence. The instruction is in these words: "If you find that the defendant failed in all respects to exercise the care required, yet if you further find that the injuries complained of were in any degree contributed to by the fault, want of care, or negligence of the plaintiff, then the plaintiff could not recover." Now, to justify a verdict against the plaintiff, it was not necessary, as the instruction implied, that the jury should find affirmatively that the plaintiff was guilty of contributory negligence. They were bound to render such verdict if they simply failed to find that he was not thus guilty. Taking the two instructions together we think that they were calculated to mislead.

II.   The court gave an instruction in these words: "If the jury find from the evidence that the defendants were in the conduct of the business of apothecaries, and you further find that while in the line of such business the plaintiff called for an extract of dandelion, and that in response thereto one of

2. ——— : of partner in matter outside of firm: business : otner partner not liable.

the defendants negligently produced for the plaintiff the extract of *belladonna*, and that the same was a deadly poison, and that, through the said negligence of the defendants, the plaintiff was led to believe that the compound was the extract of dandelion, and that the plaintiff was induced to take a dose of the same, under such belief, without any fault or neglect upon his part, and as the direct cause of the taking of such poison the plaintiff became sick, to his injury, then you should find for the plaintiff." The giving of this instruction is assigned as error. The court doubtless intended to be understood that if the jury found the facts mentioned in the instruction they should find for the plaintiff as against both defendants. But there is no pretense that the defendant H. P. Duffield had anything to do with the transaction personally. If he became liable, his liability arose, not from his own act, but that of his partner. But, as we have seen, it was not the drug sold which produced the injury. It was what the plaintiff helped himself to from the jar while S. B. Duffield was doing up the package sold. According to the plaintiff's testimony, it was what S. B. Duffield consented to his taking as a gift. Now, whatever duty of care S. B. Duffield may have owed him in such a transaction, the firm did not owe him any, unless giving away goods was a part of the firm business, and there is no evidence that it was. In our opinion the instruction cannot be sustained.

III. The court gave an instruction in these words: "The mere taking of medicine from a jar which had been designated by the defendant as containing the drug called for, in the presence of the defendant, and with his knowledge, and not from the portion taken out by the defendant, would not, of itself, alone considered, exonerate the defendants from liability; but should it further appear that it was taken under such circumstances as to preclude the defendant from the exercise of his knowledge and discretion as a druggist, or under such circum-

3. INSTRUCTIONS: must present both sides of the case.

stances as would cause it to appear that the plaintiff acted upon his personal knowledge of the nature and quality of the drug, independent of the knowledge of the defendant, the defendants would not be liable." The giving of this instruction is assigned as error.

The plaintiff testified, in effect, that he took the drug under the permission of S. B. Duffield. The latter denied that he gave such permission. If he is to be believed, the plaintiff was a trespasser; and, if a trespasser, he cannot be allowed to set up his own ignorance, and say that he relied upon S. B. Duffield's knowledge, and was misled by his mistake. The instruction precluded the consideration of the defendants' theory of the case, which was supported by evidence that the jury might have believed. That a person trespassing upon the property of another cannot recover for an injury sustained through the negligence of the owner in respect to such property, unless the negligence was wanton, or evinced an indifference to the safety of others, appears to us to be well settled. *Bush v. Brainard*, 1 Cow., 78; *Baltimore, etc., R. Co. v. Schwindling*, 101 Pa. St., 258; *Gillespie v. McGowan*, 100 Id., 144; *Morrissey v. Eastern R. Co.*, 126 Mass., 377; *Hargreaves v. Deacon*, 25 Mich., 1; *Severy v. Nickerson*, 120 Mass., 306; *O'Keefe v. Chicago, R. I. & P. R. Co.*, 32 Iowa, 467; *Vanhorn v. Burlington, C. R. & N. R'y Co.*, 63 Id., 67. In *Parker v. Portland Pub. Co.*, 69 Me., 173, it was held that even a licensee could not recover. In our opinion the instruction cannot be sustained.

REVERSED.

BECK, CH. J., *dissenting.*—The circuit court failed to present the theory of the defense, so far as it is based upon the claim that plaintiff was trespassing upon the property of defendants when he took the poison. There is a satisfactory answer to this objection, based upon this ground: In my opinion, there is no evidence whatever tending to support

the allegation of defendant's answer to the effect that defendant was a trespasser, or guilty of wrong in taking the poison. The plaintiff, in his evidence, declares that he took it upon the explicit direction of defendants. The defendant who had the transaction with plaintiff testifies, substantially, that plaintiff came to defendants' store and asked for dandelion. After some conversation as to price and quantity of the drug desired by plaintiff, the defendant proceeded to put up *belladonna* instead of dandelion. While the poison was being put up, plaintiff took from the jar, whence defendant had taken the drug, a dose. No assent thereto was given by defendant, nor did he object. He testifies that he saw plaintiff taking the drug from the jar, and that nothing was said by either party. Surely it cannot be said that plaintiff, according to defendant's own testimony, was guilty of a trespass, or what the law would consider a wrong. The defendants kept the drug for sale. Plaintiff served himself instead of asking defendants to serve him, and took the identical drug which defendants had indicated to be the medicine he wanted. But it is said that he took what he had not purchased. This is not correct. He had bargained for a specified quantity, and while that was being put up took a small quantity in addition thereto. Here clearly arose an implied promise to pay for what he took, if it was worth anything. The transaction was in fact, a sale of the dose taken by plaintiff.

It cannot be claimed that upon the facts of the case defendants could have sustained an action against plaintiff for a trespass, or for wrongfully taking, or could have successfully prosecuted him for a theft. Such proceedings, if attempted, would not have been successful, and no greater success ought to attend defendants' endeavor to escape liability for their negligence on the ground of the trespass or wrong of plaintiff in serving himself to a poison which defendants had indicated to be the medicine which he desired to take. It may not be a usual thing for the patrons of a drug-store, or

of a mercantile establishment, to "help themselves" to drugs or goods. But I am quite sure that the transaction, as disclosed by the evidence of defendant and the undisputed facts of the case, was not and cannot be considered a trespass or wrong upon the part of the plaintiff. It is not disputed that the plaintiff and defendants lived in the same village, and were acquaintances of more or less intimacy, and that plaintiff had before made purchase of defendants of dandelion, and that the act of plaintiff was not at the time treated by defendants as an unusual or improper thing. The most that can be said of it is that plaintiff's acts exhibited a degree of familiarity which is not uncommon among acquaintances.

I reach the conclusion that, as there was an utter absence of evidence to support the defense based upon plaintiff's "trespass," or wrong, the circuit court did not err in failing to present the issues involved therein to the jury, or to instruct them thereon. These views sufficiently answer all that is said in the opinion of the majority in regard to the trespass and wrong of plaintiff, in which I cannot concur.