JOHN SWANSON, by His Next Friend, AUGUST LANGSTRUM, v. W. H. FRENCH, Appellant.

Practice. Where a party, though without objection, develops collateral and immaterial matter on cross-examination, he can not contradict it.

SAME. Erroneous admission of testimony will reverse, unless it appears affirmatively that no prejudice resulted.

SAME. In a suit for malpractice, it is proper to exclude testimony tending to show that plaintiff's counsel is to receive a contingent fee.

Instructions. One instruction charged that if plaintiff's injury was due to disobeying his physician the verdict should be for defendant. Another, that plaintiff must show freedom from contributory negligence. *Held*, the charge, as a whole, did not put it on defendant to show contributory negligence.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

SATURDAY, DECEMBER 15, 1894.

THIS is an action at law to recover damages from defendant, who is a physician, for alleged malpractice in setting and caring for a fractured limb. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Mills & Keeler* for appellant.

*Rickel & Crocker* for appellee.

Deemer, J.—About the fifteenth day of June, 1891, the plaintiff met with an accident which resulted in a compound, comminuted fracture of the two lower bones of the leg. He employed the defendant, who is a regular practicing physician, to set the fractured member, and to treat him until well. And he claims that defendant undertook to do so, but that he did not properly·bandage and otherwise care for the same, nor did he properly set the fractured bones. He alleges that, by reason of the unskillful and negligent treatment given him, his limb is out of shape and crooked, and the bones thereof uneven; that the limb is weak, and its usefulness greatly impaired—whereby he has suffered great and permanent injury. The defendant admits the accident, and that he undertook the treatment of the plaintiff, but denies every other allegation and claim of plaintiff. The case was tried to a jury, and a verdict returned for plaintiff on which judgment was rendered, and defendant appeals. There is a sharp conflict in testimony regarding the main facts of the case, and with reference to the treatment given by defendant, and the care exercised by him; but, as it was the province of the jury to determine the questions presented, we are not asked to, nor can we, interfere with its findings. Error is assigned upon the admission and rejection of testimony, the instructions given by the court, and the ruling of the court on the motion for a new trial, and to these matters we address ourselves.

I.   The defendant contended that the condition of plaintiff's limb was due to his removing the bandage and splints, contrary to his order, and in using his limb too soon after the injury. He introduced as a witness one Hannah Engstrom, who testified that plaintiff told her he had taken the splints off himself;

that he was tired of wearing them, and that he burned them up; and that the doctor did not know it. She testified that this was when plaintiff was in the house, and before he got his crutches.

On cross-examination the witness testified that it was about the middle of September that plaintiff had told her about removing the splints; that plaintiff was sitting on a chair, and had his leg on another. She also testified on cross-examination that she had never seen his bare leg, and never noticed that it was crooked. She also testified as follows in answer to the questions indicated: "*Q.* Did you not, in the presence of John Swanson and your sister, Mrs. Langstrom, who is now dead, at their place in Cedar Rapids,—did you not say to Mr. Swanson, the plaintiff, 'John, your leg is crooked, and it will never be straight?' *A.* No, sir. *Q.* Never said anything of that kind? *A.* No, sir; I did not. *Q.* Didn't you frequently tell your sister that John's leg was crooked, and that it never would be straight? *A.* No, sir; I seen it after he got out with his crutches. *Q.* Did you see it about the time he commenced walking on his crutches? *A.* I saw it, but never saw his bare leg. *Q.* Are you sure you never said anything like that? *A.* Yes, sir."

This line of cross-examination was not objected to, but as it was not strictly cross-examination, and related to a wholly irrelevant and collateral matter, the plaintiff was bound by it, for he made the witness his own, and could not afterward contradict her. *Clark v. Reiniger*, 66 Iowa, 507, 24 N. W. Rep. 16; *Eikenberry v. Edwards*, 67 Iowa, 18, 24 N. W. Rep. 570; *Madden v. Koester*, 52 Iowa, 692, 3 N. W. Rep. 790; *Eames v. Whittaker*, 123 Mass. 342; 1 Greenl. Ev., section 449. Notwithstanding this rule, the plaintiff was permitted to show, over the objection of the defendant, by Jennie Engstrom, that the witness had stated in the presence of Mrs. Langstrom and one Mrs. Dye, that

plaintiff's leg was crooked. No time or place was fixed in the interrogatory propounded to Jennie. Plaintiff was also permitted to show, over defendant's objections, by Mrs. Dye, that in September or October Hannah Engstrom stated in the presence of Mrs. Langstrom, plaintiff, and Jennie Engstrom, that plaintiff's leg was crooked. It is apparent that the court was in error in admitting this testimony. It was not admissible as substantive testimony, because the witness making the declaration was not a party to the record. *State v. Hamilton,* 32 Iowa, 574; 1 Greenl. Ev. 462. It was not admissible for impeaching purposes, because it related to a wholly collateral and immaterial matter. And, if it were offered for impeaching purposes, the testimony of Mrs. Dye was inadmissible, because the foundation question put to Hannah Engstrom was not sufficient. It is insisted on the part of the appellee, however, that the error in admitting the testimony of these witnesses was without prejudice, because the testimony showed, without contradiction, that plaintiff's leg was in the same condition when the splints were taken off as it appeared at the trial. In this we can not agree with counsel. It was strenuously contended on the part of the defendant that it was the premature removal of the splints and use of the limb that caused the trouble, and much testimony was taken upon this point. It is true, the defendant says that, when he saw the limb in October, the leg was something in the condition that it was upon the trial, but not so crooked. The time defendant saw the limb was somewhere about the last of October, and the splints were taken off between the twenty-second and twenty-ninth days of September. The record shows a decided conflict in the evidence as to the condition of the limb when the splints were removed, and as to the cause of its being crooked, and we are not justified in saying there was no prejudice in the admission of this

testimony. Again, this testimony had the additional tendency to discredit defendant's witness in the eyes of the jury; and relating, as it did, to wholly immaterial matters, it ought to have been excluded.

Where testimony has been erroneously admitted, prejudice will be presumed; and it must affirmatively appear that none resulted, or the case will be reversed. *George v. Railway Co.*, 53 Iowa, 504, 5 N. W. Rep. 615; *Machine Co. v. Jacobson*, 73 Iowa, 547, 35 N. W. Rep. 627. And such error alone is sufficient to reverse a case. *Strobel v. Moser*, 70 Iowa, 126, 29 N. W. Rep. 821.

II. Witness G. S. Russell testified that, in a conversation at his house, plaintiff told him that he (Swanson) had taken the splints off himself, and that he was going to sue Dr. French. "*Q.* What else did he say about it? *A.* That it would not cost him anything. *Q.* What else did he say? *A.* That covers about all. He said it would not cost him anything, whether he lost or won. (Plaintiff's counsel here moved to strike out, as incompetent, irrelevant, and immaterial, that part of answer where witness says it would not cost him anything, whether he won or lost. Sustained by the court, and defendant excepted.)" So, also, another witness, Peter Swanson, testified on cross-examination by plaintiff's counsel that he had talked with plaintiff a number of times, and had told him to drop the suit. The subject being thus opened up, defendant inquired, on redirect examination: "*Q.* Swanson, Mr. Rickel asked you, and you answered that you had advised John Swanson not to bring this suit. What did he say to you in answer to that? *A.* He told me just like this: 'Mr. Rickel and Crocker have been talking to me to do this—' He said it would not cost him anything, so he didn't care if he lost the suit or won it, because it would not cost him anything. (Plaintiff here moved to strike out the answer, as incom-

petent, irrelevant, and immaterial. Sustained, and defendant excepted.)" We think these rulings were correct. *Allison v. R'y Co.*, 42 Iowa, 280; *Small v. R'y Co.*, 55 Iowa, 582, 8 N. W. Rep. 437.

III. Complaint is made of the fifth instruction given by the court, which was as follows: "(5) If you find from the evidence that plaintiff disobeyed the orders of defendant, as his physician, by removing the splints from his leg—by using the same before receiving the permission of defendant; that plaintiff, whilst his leg was not sufficiently recovered, and against the orders of defendant, procured crutches and went about; that he became intoxicated, and used his leg whilst in that condition—and if you further so find that by reason of said acts, or either of them, or by reason of any other act or fact disclosed by the evidence before you, the plaintiff has contributed in any degree directly to the injury of his leg complained of by him herein, then the plaintiff can not recover, and you should find for the defendant." The exact complaint lodged against it is that it shifted the burden of proof to the defendant, to prove contributing negligence. In instruction number 4 the jury were explicitly told that the burden was upon the plaintiff to establish that he was not guilty of any fault or negligence which directly contributed to the injury, and that, if he failed to do so, then they should find for the defendant. The instruction complained of did not attempt to define where the burden was. This was plainly covered by the preceding one. It did announce a correct rule of law, and was not erroneous, when taken in connection with the others. The case differs materially from *Gwynn v. Duffield*, 66 Iowa, 708, 24 N. W. Rep. 523; *Patterson v. R'y Co.*, 38 Iowa, 280—cited by appellant's counsel.

IV. Complaint is made of the action of the court in overruling that portion of the motion for a new trial

setting forth newly discovered evidence. We are inclined to think the motion ought to have been sustained on this ground, but perhaps would not have interfered with the verdict, had the motion rested upon this ground alone. There is not such a showing·of diligence on the part of the defendant to obtain the testimony as there ought to be, and yet, in view of the whole record, we think the motion for new trial ought to have been sustained for the errors above pointed out, and because of newly discovered evidence.

V.   Other errors are complained of in the admission and rejection of testimony.   Without setting them forth, it is sufficient to say that we have carefully examined the questions presented, and see no error. The sixth instruction is correct.   For the errors above pointed out, the judgment of the district court is RE-VERSED.