Monty ALEXANDER, Appellant,

v.

The MEDICAL ASSOCIATES CLINIC, Professional Corporation, Appellee.

No. 00–1764.

Supreme Court of Iowa.

June 12, 2002.

Matthew D. Dake and Melissa M. Harbaugh–Adams of Wertz & Leehy, P.C., Cedar Rapids, for appellant.

Gregory C. Guiney of Lane & Waterman, Davenport, for appellee.

TERNUS, Justice.

The plaintiff in this case, a trespasser on the defendant's land, asks us to abolish the common law rule limiting the liability of a landowner for injuries to trespassers and replace it with a negligence standard. We decline to do so and therefore affirm the district court's grant of summary judgment to the defendant landowner.

## I. *Background Facts and Proceedings.*

The defendant/appellee, Medical Associates Clinic, P.C., owns land upon which its office building is located. The defendant's property includes an undeveloped, open field that abuts a residential area. Unknown to the defendant, the plaintiff/appellant, Monty Alexander, entered the field late one evening to retrieve his sister's dog. Walking in darkness, he fell in a ditch and injured his knee.

The plaintiff filed this suit to recover damages for his injury, asserting the defendant was negligent in its maintenance of the property. After discovery, the defendant filed a motion for summary judgment alleging the undisputed facts established that the plaintiff was a trespasser and there were no facts to support a finding that the defendant breached its limited duty of care to a trespasser. The plaintiff resisted. The district court granted summary judgment, ruling (1) as a matter of law, the plaintiff was a trespasser, (2) the applicable standard of care was the avoidance of willful and wanton injury, not negligence, and (3) there were no facts showing the defendant breached this duty of care. This appeal followed.

## II. *Scope of Review.*

■ The scope of review for summary judgment rulings is familiar:

Our review of a summary judgment ruling is for the correction of errors of law. Summary judgment is appropriate where the moving party shows there are no genuine issues of material fact and it is entitled to judgment as a matter of law. In determining whether the moving party has met this burden, we view the record in the light most favorable to the party opposing the motion for summary judgment. This court's role on appeal is "to determine whether a genuine issue of material fact exists and whether the law was correctly applied."

*Kelly v. Iowa Mut. Ins. Co.,* 620 N.W.2d 637, 641 (Iowa 2000) (citations omitted) (quoting *Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524, 528 (Iowa 1995)).

## III. *Issues on Appeal.*

The issues raised on appeal are rather narrow. The plaintiff challenges only the second part of the district court's decision, namely, that the defendant must be judged by the common law duty to avoid willful and wanton injury to a trespasser. The plaintiff argues on appeal that the defendant should be held to a duty of reasonable care and that there is a factual issue as to whether that duty of care was breached. The plaintiff does not contest the district court's ruling that, as a matter of law, he was a trespasser and that the defendant did not breach its common law duty of care to the plaintiff. Thus, the determinative issue on appeal is whether Iowa should abandon its common law rule of trespasser liability and replace it with a duty of reasonable care under the circumstances.

## IV. *Discussion.*

■ Iowa has long adhered to the common law rule that "a possessor of land

owes no duty to a trespasser other than not to injure him willfully or wantonly, and to use reasonable care after his presence becomes known to avoid injuring him." *Champlin v. Walker*, 249 N.W.2d 839, 842 (Iowa 1977); *accord Mann v. Des Moines Ry.*, 232 Iowa 1049, 1057, 7 N.W.2d 45, 51 (1942); *Gwynn v. Duffield*, 66 Iowa 708, 713, 24 N.W. 523, 525 (1885). Thus, a landowner's duty with respect to a trespasser is twofold: (1) the landowner may not use his land in such a way that he deliberately or maliciously causes injury to a trespasser, and (2) once the landowner is aware of the presence of a trespasser, the landowner must use reasonable care to avoid injuring the trespasser. *See generally Webster's Third New International Dictionary* 2575 (defining "wanton"), 2617 (defining "willful"). A "trespasser" is one who has no legal right to be upon another's land and enters the land without the express or implied consent of the owner. *Reasoner v. Chicago, Rock Island & Pac. R.R.*, 251 Iowa 506, 510, 101 N.W.2d 739, 741 (1960); *Mann*, 232 Iowa at 1056, 7 N.W.2d at 50.

The trespasser rule arose "out of the special privileges accorded the occupation of land" in feudal England. *Rosenau v. City of Estherville*, 199 N.W.2d 125, 135 (Iowa 1972); *accord Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S.Ct. 406, 410, 3 L.Ed.2d 550, 554 (1959); 62 Am.Jur.2d *Premises Liability* § 79, at 431–32 (1990). The rule has continued to exist based on a belief that a property owner should not be obligated to make his or her property safe "or to keep it in any particular condition" for the benefit of intruders. *Mann*, 232 Iowa at 1062, 7 N.W.2d at 53. A well-known treatise on torts perhaps best articulates the rationale behind our trespasser rules:

> The possessor of land has a legally protected interest in the exclusiveness of his possession. In general, no one has any right to enter without his consent, and he is free to fix the terms on which that consent will be given. Intruders who come without his permission have no right to demand that he provide them with a safe place to trespass, or that he protect them in their wrongful use of his property.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 58, at 393 (5th ed.1984) [hereinafter *Prosser on Torts*].

The plaintiff points out that several jurisdictions have abolished the traditional analysis that determines the duty owed by a landowner based on the status of the injured party—invitee, licensee or trespasser. *See Sheets v. Ritt, Ritt & Ritt, Inc.*, 581 N.W.2d 602, 604–05 (Iowa 1998) (citing cases that have rejected common law distinctions). In fact, in *Sheets*, four members of this court favored taking a first step down that path by abolishing the distinction between invitee and licensee. *Id.* at 606. That position, however, did not gain the support of a majority of the court, and premises liability in Iowa remains dependent on the status of the plaintiff. *Richardson v. Commodore, Inc.*, 599 N.W.2d 693, 698 n. 3 (Iowa 1999).

The present case presents a different question than that presented in *Sheets*. In this case, we are asked to impose upon landowners a duty of reasonable care with respect to *trespassers*—persons who enter the landowner's property without the express or implied consent of the landowner. Although, as already noted, a few courts have abandoned all classifications with respect to landowner liability, the majority of courts have retained the special duties of a property owner to a trespasser. We will briefly review the position of other courts on this issue, not because the law is a popularity contest where the side with the most votes wins, but because the judgment

of other jurisdictions reflects, we think, a prevailing belief that the interests of trespassers do not warrant a further reduction in the right of property owners to use their land as they see fit.

The landmark case in which a court first abandoned the common law classifications historically used in premises liability law was *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968), *abrogated in part by statute as stated in Calvillo–Silva v. Home Grocery*, 19 Cal.4th 714, 80 Cal.Rptr.2d 506, 968 P.2d 65, 72 (1998). By the end of the 1970s, seven states had followed California's lead and five states had not, the latter group choosing instead to retain the traditional rules based on the entrant's status.[1] During that same period six states chose to abolish or modify the distinction made between invitees and licensees, but did not take the same step with respect to trespassers.[2] Thus, in the twelve years after *Rowland*, a total of eleven states rejected California's rule that the liability of property owners to trespassers should be judged by the same standard as their liability to persons legally on their land.

Since 1980, the rejection of California's one-rule-fits-all approach has been even more overwhelming. In Rhode Island, the Rhode Island Supreme Court partially overruled its earlier decision that had followed *Rowland* and held that the traditional rules governing liability to trespassers should be retained. *Tantimonico v. Allendale Mut. Ins. Co.*, 637 A.2d 1056, 1057 (R.I.1994), *overruling in part Mariorenzi v. DiPonte, Inc.*, 114 R.I. 294, 333 A.2d 127, 131–32 (1975). In addition, the state legislatures in California and Colorado abrogated or partially abrogated court decisions adopting a negligence standard for all premises liability actions. In Colorado, the legislature passed a statute that reinstated a classification-based system of liability for landowners. *See* Colo.Rev.Stat. § 13–21–115 (1997). In California, in response to cases in which trespassing criminals had recovered for injuries incurred during their unlawful intrusions, the state legislature enacted a law that limited landowners' liability to trespassers who were on the property to commit a crime, essentially reinstating the common law duty in such cases. *See* 1985 Cal. Stat. ch. 1541, § 1 (codified at Cal. Civil Code § 847 (West 2002)).

1. *Compare Webb v. City & Borough of Sitka,* 561 P.2d 731, 733 (Alaska 1977) (abolishing classifications), *abrogated in part by statute as stated in University of Alaska v. Shanti,* 835 P.2d 1225, 1228 n. 5 (Alaska 1992); *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308, 312–13 (1971) (same), *abrogated in part by statute as stated in Bath Excavating & Constr. Co. v. Wills,* 847 P.2d 1141, 1145 & n. 8 (Colo.1993); *Pickard v. City & County of Honolulu,* 51 Haw. 134, 452 P.2d 445, 446 (Haw.1969) (same); *Cates v. Beauregard Elec. Coop., Inc.,* 328 So.2d 367, 370–71 (La.1976) (same); *Ouellette v. Blanchard,* 116 N.H. 552, 364 A.2d 631, 634 (1976) (same); *Basso v. Miller,* 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868, 872 (1976) (same); *Mariorenzi v. DiPonte, Inc.,* 114 R.I. 294, 333 A.2d 127, 131–32 (1975) (same), *overruled in part by Tantimonico v. Allendale Mut. Ins. Co.,* 637 A.2d 1056, 1057 (R.I.1994), *with McMullan v. Butler,* 346 So.2d 950, 952-53 (Ala. 1977) (refusing to abandon common law distinctions); *Bailey v. Pennington,* 406 A.2d 44, 47–48 (Del.1979) (same); *Mooney v. Robinson,* 93 Idaho 676, 471 P.2d 63, 65 (1970) (same); *Di Gildo v. Caponi,* 18 Ohio St.2d 125, 247 N.E.2d 732, 736 (1969) (same); *Tjas v. Proctor,* 591 P.2d 438, 441 (Utah 1979) (same).

2. *See Wood v. Camp,* 284 So.2d 691, 693, 695 (Fla.1973); *Poulin v. Colby College* 402 A.2d 846, 851 (Me.1979); *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43, 51–52 & n. 7 (1973); *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639, 642 (1972); *O'Leary v. Coenen,* 251 N.W.2d 746, 751 (N.D.1977); *Antoniewicz v. Reszcynski,* 70 Wis.2d 836, 236 N.W.2d 1, 5, 11 (1975).

In addition to those jurisdictions retreating from a prior, wholesale adoption of negligence principles, eight states refused to change their conventional principles of trespasser liability, even though they judicially abolished or modified the distinction between an invitee and a licensee.[3] Additionally, two states, Maryland and Oklahoma, decided to retain their common law rules governing liability to trespassers, but left open the question whether they would discard the invitee and licensee classifications. *Murphy v. Baltimore Gas & Elec. Co.*, 290 Md. 186, 428 A.2d 459, 463 (1981), *overruled in part on other grounds by Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 705 A.2d 1144, 1151 (1998); *Lohrenz v. Lane*, 787 P.2d 1274, 1276–77 (Okla.1990); *see Abbott v. Wells*, 11 P.3d 1247, 1248 (Okla.2000) (applying status analysis to invitee in premises liability case). Finally, seven more states chose to maintain the common law rules making the duty owed by a landowner dependent on the status of the injured party.[4]

In stark contrast to this widespread rejection of negligence principles in trespasser cases, only one state since the 1970s has joined the minority position, abandoning all classifications.[5] *Moody v. Manny's*

*Auto Repair*, 110 Nev. 320, 871 P.2d 935, 942 (1994).

In summary, presently six states use a negligence standard to govern trespasser liability; twenty-nine states have declined the opportunity to change their rule in such cases; and two state legislatures have reinstated the common law trespasser rule after it had been abolished by court decision. Given the fact that only one court in the last twenty-seven years has abandoned the common law trespasser rule, the so-called "trend" to adopt a universal standard of care for premises liability has clearly lost momentum. *See Baldwin v. Mosley*, 295 Ark. 285, 748 S.W.2d 146, 148 (1988) ("Although a number of jurisdictions during the 1970's indicated a willingness to discard the legal distinctions between licensees and invitees, that abolition movement has since lost its steam."); *Lohrenz*, 787 P.2d at 1276 (stating "a number of courts which have *more recently* considered the issue[ ] have expressed continued adherence to the common law principles of duty based on status as a proper balance between the rights of a landowner and those of the general public"); *Tantimonico*, 637 A.2d at 1058, 1060 (noting that "by the late seventies an increasing number of courts had specifically rejected *Rowland* "

**3.** *Washington Metro. Area Transit Auth. v. Ward*, 433 A.2d 1072, 1073–74 (D.C.1981); *Jones v. Hansen*, 254 Kan. 499, 867 P.2d 303, 310 (1994); *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51, 57 (1996); *Ford v. Bd. of County Comm'rs*, 118 N.M. 134, 879 P.2d 766, 770 (1994); *Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882, 892 (1998); *Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn. 1984), *overruled in part on other grounds by McIntyre v. Balentine*, 833 S.W.2d 52, 54, 57 (Tenn.1992); *Mallet v. Pickens*, 206 W.Va. 145, 522 S.E.2d 436, 446 (1999); *Clarke v. Beckwith*, 858 P.2d 293, 296 (Wyo.1993).

**4.** *Baldwin v. Mosley*, 295 Ark. 285, 748 S.W.2d 146, 148 (1988); *Morin v. Bell Ct. Condo. Ass'n, Inc.*, 223 Conn. 323, 612 A.2d 1197, 1201 (1992); *Kirschner v. Louisville*

*Gas & Elec. Co.*, 743 S.W.2d 840, 844 (Ky. 1988); *Little v. Bell*, 719 So.2d 757, 762 (Miss.1998); *Carter v. Kinney*, 896 S.W.2d 926, 930 (Mo.1995); *Vega v. Piedilato*, 154 N.J. 496, 713 A.2d 442, 449 (1998); *Tincani v. Inland Empire Zoological Soc'y*, 124 Wash.2d 121, 875 P.2d 621, 624 (1994).

**5.** The state of Montana has on occasion been included in lists of states abolishing classifications as the basis for premises liability. While it is true the court has abandoned status-based liability rules, the Montana Supreme Court's decision to do so was based on a state statute that "prevented [the court] from distinguishing" between classes of injured parties. *See Limberhand v. Big Ditch Co.*, 218 Mont. 132, 706 P.2d 491, 496 (1985).

and that "[t]he more recent trend in premises-liability law is to uphold the traditional common-law categories"). Keeton, in his treatise on torts, suggests that courts are acquiring "a more healthy skepticism toward invitations to jettison years of developed jurisprudence in favor of beguiling legal panacea." *Prosser on Torts* § 62, at 434.

We think the California approach has failed to gain favor, at least with respect to trespasser liability, because the common law rule retains validity in modern day life. *See id.* (stating "courts are gaining a renewed appreciation for the considerations behind the traditional duty limitations toward trespassing adults"). Land ownership is not limited to the privileged few in modern American society; many, many persons own real property. The private ownership of land continues to be a treasured opportunity, and the interests of landowners are still deserving of consideration. We agree with one treatise writer that in a society such as ours, "it is considered a socially desirable policy to allow a person to use his own land in his own way, without the burden of watching for and protecting those who come there without permission or right." *Id.* § 58, at 395. As one court has stated, "It is unreasonable to subject an owner to a 'reasonable care' test against someone who isn't supposed to be there and about whom he does not know." *Wood v. Camp*, 284 So.2d 691, 693 (Fla. 1973).

The common law rule is also better suited to achieve a reasonable balance between individual property rights and the interests of a trespasser. Under the common law rule, a landowner knows in advance what his duty is; he must refrain from maliciously or deliberately injuring a trespasser. A duty of reasonable care, in contrast, despite its common usage, is based on a much more amorphous standard, providing little guidance to the landowner. *See id.* at 694 ("Such vague terminology applied in every circumstance affords no guidelines or distinctions ...; just to say that the rule is 'reasonable care under the circumstances' in all instances ignores the responsibility of the law to provide guidance."); *Carter v. Kinney*, 896 S.W.2d 926, 930 (Mo.1995) (refusing to abolish common law classifications, stating "[t]o abandon the careful work of generations for an amorphous 'reasonable care under the circumstances' standard seems—to put it kindly—improvident"); *Tantimonico*, 637 A.2d at 1059 (quoting another jurist's contrast of the common law rule, described as " 'well-settled and reasonable,' " with the negligence standard, " 'a single vague duty of reasonable care, under which the property owner acts at his peril with no standard by which he can judge his obligations in advance' " (citation omitted)). Moreover it is no solace to the landowner, who has spent emotional and monetary resources to defend a meritless suit, that a judge or jury eventually finds no liability. *See Wood*, 284 So.2d at 694 (noting the assurance that a jury might well find a landowner has not violated a duty of reasonable care "is a dangerous generality (and expense) to which to subject an owner"). Balanced against the need for a predictable standard by which landowners may govern their conduct is the absence of any right of a trespasser to claim more generous protection since the trespasser comes on the land without the express or implied consent or invitation of the property owner. *See Poulin v. Colby College*, 402 A.2d 846, 851 n. 5 (Me.1979) ("Whereas both invitees and licensees enter another's lands under color of right, a trespasser has no basis for claiming extended protection.").

■ In summary, we remain unconvinced that the rights of property owners have so little value in today's society that

those rights should be diminished in favor of persons trespassing on another's land. The common law standard is just as viable today as it was a century ago: a landowner has a duty not to injure a trespasser maliciously or deliberately, and to use reasonable care after the trespasser's presence becomes known to avoid injuring the trespasser. *See Champlin,* 249 N.W.2d at 842. This duty strikes an appropriate balance between the interests of the landowner and the trespasser and therefore we decline the plaintiff's invitation to abandon it. We express no opinion on whether the differentiation made between invitees and licensees remains viable.

### V. *Disposition.*

We conclude the district court applied the correct legal principles in determining that the defendant was entitled to judgment as a matter of law. Because the plaintiff claims no other error in the court's ruling, we affirm.

**AFFIRMED.**

All justices concur except LAVORATO, C.J., who concurs specially and LARSON, J., who joins this concurrence.

STREIT, J., concurs specially by a separate opinion.

LAVORATO, Chief Justice, (concurring specially).

In *Sheets v. Ritt, Ritt & Ritt, Inc.,* four justices of this court decided to abrogate the common-law distinctions in premises liability cases between invitees and licensees. 581 N.W.2d 602, 606 (Iowa 1998). They stopped short of deciding "whether a distinction should persist with regard to trespassers," leaving that question "for an appropriate case in which the parties can test whether the special nature of an act of trespass still calls for a continuation of that entrant's status." *Id.*

For reasons that follow, I suggest the four justices in *Sheets* were correct in their decision to abolish the common-law duty distinctions between invitees and licensees in premises liability cases. *See id.* As for trespassers, I would follow the lead of those states that have abolished the distinction between invitees and licensees but have retained the common-law rules regarding trespassers. *See Washington Metro. Area Transit Auth. v. Ward,* 433 A.2d 1072, 1073–74 (D.C.1981); *Wood v. Camp,* 284 So.2d 691, 693, 695 (Fla.1973); *Jones v. Hansen,* 254 Kan. 499, 867 P.2d 303, 310 (1994); *Poulin v. Colby College,* 402 A.2d 846, 851 (Me.1979); *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43, 51– 52, 51 n. 7 (1973); *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639, 642 (1972); *Heins v. Webster County,* 250 Neb. 750, 552 N.W.2d 51, 57 (1996); *Ford v. Bd. of County Comm'rs,* 118 N.M. 134, 879 P.2d 766, 770 (1994); *Nelson v. Freeland,* 349 N.C. 615, 507 S.E.2d 882, 892 (1998); *O'Leary v. Coenen,* 251 N.W.2d 746, 751 (N.D.1977); *Hudson v. Gaitan,* 675 S.W.2d 699, 703 (Tenn.1984), *overruled in part on other grounds by McIntyre v. Balentine,* 833 S.W.2d 52, 54, 57 (Tenn.1992); *Mallet v. Pickens,* 206 W.Va. 145, 522 S.E.2d 436, 446 (1999); *Antoniewicz v. Reszcynski,* 70 Wis.2d 836, 236 N.W.2d 1, 5, 11 (1975); *Clarke v. Beckwith,* 858 P.2d 293, 296 (Wyo.1993). This approach represents the middle ground.

**I. Background.** To understand why I favor abolishing the distinction between invitees and licensees, some historical background is in order. The evolution of the common-law trichotomy of invitee, licensee, and trespasser came about in a much different time and in a wholly different legal climate from the one that exists today. *Mallet,* 522 S.E.2d at 439.

The trichotomy "traces its roots to nineteenth-century England." *Nelson,* 507

S.E.2d at 887 (citing John Ketchum, *Missouri Declines an Invitation to Join the Twentieth Century: Preservation of the Licensee–Invitee Distinction in Carter v. Kinney*, 64 UMKC L.Rev. 393, 394 (1995)). The trichotomy "emanated from an English culture deeply rooted to the land; tied with feudal heritage; and wrought with lords whose land ownership represented power, wealth, and dominance." *Id.* (citing same). Although "aware of the threat that unlimited landowner freedom and its accompanying immunity placed upon the community," nineteenth-century courts nevertheless "refused to provide juries with unbounded authority to determine premises-liability cases." *Id.* (citing Michael Sears, *Abrogation of the Traditional Common Law of Premises Liability*, 44 U. Kan. L.Rev. 175, 176 (1995)). They did so because "juries were comprised mainly of potential land *entrants* who most likely would act to protect the community at large and thereby reign in the landowner's sovereign power over his land." *Id.* (citing same). The trichotomy was therefore "created to disgorge the jury of some of its power by either allowing the judge to take the case from the jury based on legal rulings or by forcing the jury to apply the mechanical rules of the trichotomy instead of considering the pertinent issue of whether the landowner acted reasonably in maintaining his land." *Id.*

Moreover, the trichotomy came about at a time when negligence principles were not in existence. *Id.* (citing Norman S. Marsh, *The History and Comparative Law of Invitees, Licensees and Trespassers*, 69 Law Q. Rev. 182, 184 (1953)). When these principles did emerge, they conflicted with the immunity conferred upon landowners under the trichotomy. *Id.* (citing Kathryn E. Eriksen, *Premises Liability in Texas—Time for a "Reasonable" Change*, 17 St. Mary's L.J. 417, 421 (1986)). Despite the conflict, common-law courts refused to replace the trichotomy with modern principles of negligence law, "as they did in almost all other tort areas, but rather 'superimposed the new [negligence] principles upon the existing framework of entrant categories.'" *Id.* at 887–88 (quoting Sears, *Abrogation of the Traditional Common Law of Premises Liability*, 44 U. Kan. L.Rev. at 176 (1995)). As a result, we now have the "current scheme of premises-liability law which allows judges to maintain control over jury discretion while, at the same time, utilizing 'duty of care' principles set forth in negligence theory." *Id.* at 888 (citing same).

**II. The Change.** Ironically, the first move toward abolishing the trichotomy occurred in England, the jurisdiction that gave rise to the trichotomy. In 1957, England passed the Occupier's Liability Act which abolished the distinction between invitees and licensees. *See* Occupier's Liability Act, 5 & 6 Eliz. 2, c. 31 (1957) (Eng.). The Act imposed upon the occupier of land a "common duty of care" toward all persons who lawfully enter the premises. *Id.*

Two years later, the United States Supreme Court criticized the trichotomy and refused to import it into admiralty law. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630–32, 79 S.Ct. 406, 409–410, 3 L.Ed.2d 550, 554–55 (1959). The Court noted that "[t]he distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism." *Id.* at 630, 79 S.Ct. at 410, 3 L.Ed.2d at 554. The Court further noted:

> In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found

it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards "imposing on owners and occupiers a single duty of reasonable care in all the circumstances."

*Id.* at 630–31, 79 S.Ct. at 410, 3 L.Ed.2d at 554–55 (footnotes omitted).

Nine years following *Kermarec,* California abolished its traditional duty classification scheme of invitees, licensees, and trespassers and replaced it with ordinary negligence principles. *Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, 568–69 (Cal.1968). *Rowland* provided the impetus for a number of jurisdictions to reassess the viability of the trichotomy as outlined in the majority opinion in the case before this court.

In recent times, this court has been poised to abandon the trichotomy. For example, four years after *Rowland,* this court questioned the future applicability of the trichotomy, citing and discussing *Kermarec* and *Rowland. See Rosenau v. City of Estherville,* 199 N.W.2d 125, 135–36 (Iowa 1972). In two other cases, this court expressed its displeasure with the trichotomy. *See Paul v. Luigi's, Inc.,* 557 N.W.2d 895, 897 (Iowa 1997) (explaining our reluctance to conclusively establish land possessor's duty of care on the basis of injured party's status); *Pottebaum v. Hinds,* 347 N.W.2d 642, 645 (Iowa 1984) (same). Finally, as mentioned, four justices of this

court took the step anticipated in *Paul, Pottebaum,* and *Rosenau* and decided to abrogate the distinction in premises liability cases between invitees and licensees. *See Sheets,* 581 N.W.2d at 606.

**III. Reasons for Abolishing the Distinction Between Invitees and Licensees.** As I mentioned, inherent in the trichotomy is the notion that a jury could not be trusted to enter a just verdict. As one court observed, "jurisdictions retaining the trichotomy fear that plaintiff-oriented juries—like feudal juries composed mostly of land entrants—will impose unreasonable burdens upon defendant-landowners." *Nelson,* 507 S.E.2d at 888. The same court answers the argument by noting that juries have properly applied negligence principles in all other areas

of tort law, and there has been no indication that defendants in other areas have had unreasonable burdens placed upon them. Moreover, given that modern jurors are more likely than feudal jurors to be landowners themselves, it is unlikely that they would be willing to place a burden upon a defendant that they would be unwilling to accept upon themselves.

*Id.; see also Jones,* 867 P.2d at 310 ("Studies suggest that abolition of the distinctions between the duty owed to an invitee and that owed to a licensee has not altered greatly the results reached, has not left the juries without direction or standards by which to judge the action of the occupier of lands, and has resulted in outcomes that would probably be the same as if the status rules had been applied.")

Perhaps the most important reason for abolishing the distinction is that the trichotomy has led to confusion in the law and inequity in the cases decided. Recovery by an entrant in many instances "has become largely a matter of chance, dependent upon the pigeonhole in which the law

has put him, e.g. 'trespasser,' 'licensee,' or 'invitee'—each of which has had radically different consequences in law." *Peterson*, 199 N.W.2d at 643. Consider the following:

A canvasser who comes on your premises without your consent is a trespasser. Once he has your consent, he is a licensee. Not until you do business with him is he an invitee. Even when you have done business with him, it seems rather strange that your duty towards him should be different when he comes up to your door from what it was when he goes away. Does he change his colour in the middle of the conversation? What is the position when you discuss business with him and it comes to nothing? No confident answer can be given to these questions. Such is the morass into which the law has floundered in trying to distinguish between licensees and invitees.

*Mallet*, 522 S.E.2d at 441 (citations omitted). The point is that "[i]t is often difficult, if not impossible, to discern an entrant's status." *Vega v. Piedilato*, 154 N.J. 496, 713 A.2d 442, 450 (N.J.1998) (Handler, J., concurring). *Mallet* cites the following examples from other jurisdictions underscoring the tortured logic courts have gone through in applying the trichotomy: *Franconia Assoc. v. Clark*, 250 Va. 444, 463 S.E.2d 670 (Va.1995) (considering whether mall employee lost status as an invitee by attempting to stop a robber); *Lakeview Assoc. Ltd. v. Maes*, 907 P.2d 580 (Colo.1995) (discussing whether tenant, who paid rent but happened to not own a car, was invitee or licensee when she fell while walking across the parking lot of an apartment complex); *Peterson v. Romine*, 131 Idaho 537, 960 P.2d 1266 (Idaho 1998) (considering whether plaintiff who parked in downtown parking lot provided for shoppers, but who shopped at an adjacent but unaffiliated store, was therefore not a

business invitee when she was injured by stepping into a pothole); and *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 75 Ohio St.3d 312, 662 N.E.2d 287 (Ohio 1996) (questioning whether fare-paying customer of subway system, who was assaulted and thrown onto tracks by third parties upon exiting train, was still invitee when left lying on tracks and struck by train). *Mallet*, 522 S.E.2d at 447 n. 7.

The court in *Mallet* makes the point that in cases like these the question should not be whether the plaintiff was a licensee or invitee. Rather, the question should be were the premises in question safe? Or, alternatively, "did the landowner exercise reasonable care under the circumstances to ensure that [the premises were] safe for a reasonably forseeable event, namely, that someone [might be injured under the circumstances]?" *Id.* at 442. As the court observed, "[f]raming the question in this manner is important, because it recognizes that neither landowners nor entrants make decisions with these archaic distinctions in mind." *Id.*

I agree with the *Mallet* court's ultimate conclusion:

If we wish for our law to be predictable, and we do, then we have a duty to shape it in such a way that it meshes with the general, reasonable assumptions that people make in their daily lives. Because the common law distinction between invitee and licensee does not meet that standard, it should be discarded.

*Id.* at 443.

Closely aligned with this view is the Massachusetts Supreme Court's reason for abolishing the distinction between licensees and invitees:

The problem of allocating the costs and risks of human injury is far too complex to be decided solely by the status of the entrant, especially where the status

question often prevents the jury from ever determining the fundamental question whether the defendant has acted reasonably in light of all the circumstances in the particular case. *Mounsey*, 297 N.E.2d at 51.

The court in *Mounsey* also answered those critics who say abolishing the licensee-invitee distinction will leave the jury without any standards:

> The abolition of the licensee-invitee distinction and the creation of a "reasonable care in all the circumstances" standard will not leave the jury without standards to guide their determination of reasonable conduct. The principles which are now to be applied are those which have always governed personal negligence. Our decision merely prevents the plaintiff's status as a licensee or invitee from being the sole determinative factor in assessing the occupier's liability. However, the foreseeability of the visitor's presence and the time, manner, place and surrounding circumstances of his entry remain relevant factors which will determine "in part the likelihood of injury to him, and the extent of the interest which must be sacrificed to avoid the risk of injury."

*Id.* at 52 (citations omitted). Simply put, landowners would merely be required to take reasonable care to prevent foreseeable harm. *See* Carl S. Hawkins, *Premises Liability After Repudiation of the Status Categories: Allocation of Judge and Jury Functions*, 1981 Utah L.Rev. 15, 61 (1981) (concluding ordinary negligence principles have constrained jury discretion in premises liability cases in jurisdictions that abolished the classification system).

A final reason for abolishing the distinction is that our modern social mores and humanitarian values place more importance on human life than on property. Mark J. Welter, Comment, *Premises Lia-bility: A Proposal to Abrogate the Status Distinctions of "Trespasser," "Licensee" And "Invitee" as Determinative of a Land Occupier's Duty of Care Owed to an Entrant*, 33 S.D. L.Rev. 66, 84 (1987–88). Thus,

> [a] man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values.

*Rowland*, 70 Cal.Rptr. 97, 443 P.2d at 568.

When the reasons for the rule disappear, the rule ought to disappear. The reasons for the licensee-invitee distinction are no longer viable. Therefore, the distinction ought to be abolished. *See Funk v. United States*, 290 U.S. 371, 383, 54 S.Ct. 212, 216, 78 L.Ed. 369, 376 (1933) ("It has been said so often as to have become axiomatic that the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions.").

**IV. Trespassers.** The concurring opinion in *Mounsey* notes that the logic of the argument for abolishing the distinction between licensees and invitees is equally persuasive regarding trespassers. *See Mounsey*, 297 N.E.2d at 57–58 (Kaplan, J., concurring). The concurring opinion explains that "it is sometimes just as hard to distinguish trespassers from licensees or invitees, as to distinguish licensees from invitees; and the class of trespassers is probably just as various as either of the other classes." *Id.* at 57. Although the

court in *Mounsey* abolished the distinction between licensees and invitees but retained the common-law rule as to trespassers, the court later adopted the reasonable care standard for "physically trapped trespassers." *Pridgen v. Boston Housing Auth.*, 364 Mass. 696, 308 N.E.2d 467, 477 (Mass.1974).

A treatise writer explains the rationale for retaining a separate rule for trespassers:

> [I]n a civilization based on private ownership, it is considered a socially desirable policy to allow a person to use his own land in his own way, without the burden of watching for and protecting those who come there without permission or right.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 58, at 395 (5th ed.1984) [hereinafter *Prosser*].

One court justifies the separate rule this way:

> [I]nvitees and licensees enter another's lands under color of right, [but] a trespasser has no basis for claiming extended protection. There remains the possibility that the abandonment of the status of trespasser would place an unfair burden on a landowner who has no reason to expect a trespasser's presence.

*Poulin*, 402 A.2d at 851 n. 5.

I think for the reasons expressed in *Prosser* and *Poulin* we should retain the common-law rule for parties who are trespassers. It remains to be seen whether this court might want to recognize an exception like the Massachusetts court did in *Pridgen*. Therefore, at this time I have no reason to disagree with the majority's refusal to abolish the common-law rule as to trespassers.

LARSON, J., joins this special concurrence. STREIT, J., concurs specially in a separate opinion.

STREIT, J., concurring specially.

This case involves an innocent trespasser seriously injured by what ordinarily might be considered negligent conduct if the landowner had a duty of reasonable care. The majority imposed no duty of care upon the landowner, however, because of Alexander's status as a trespasser. I disagree with the majority's conclusion. Though this case is a potential illustration of the injustice of the majority's holding, Alexander did not demonstrate he is entitled to a trial. His resistance to the Clinic's motion for summary judgment failed to generate sufficient facts to support his assertion that, even under the California standard, the Clinic owed him a duty of care.

Despite the majority's comfort in going with the "prevailing belief," I believe today's modern times present circumstances in which injustice will result from the application of our current land-entrant classification system. The horror stories alluded to by the majority concerning cases of trespassing California criminals recovering for premises injuries is misplaced and unfounded. Under the reasonable care criteria first discussed by the four justices in *Sheets*, such an extreme would not happen. The continuation of the status classification system is not different from the by-gone days of contributory negligence where a plaintiff was barred from recovery for the slightest negligence on his or her part. *See Goetzman v. Wichern*, 327 N.W.2d 742, 753–54 (Iowa 1982), *superseded by statute as stated in Slager v. HWA Corp.*, 435 N.W.2d 349 (Iowa 1989) (In response to *Goetzman*, the legislature enacted a modified form of comparative fault in Iowa Code chapter 668 which retained the essential character of comparative fault lim-

iting it only to the extent that a plaintiff whose fault is greater than the combined fault of the defendant(s) cannot recover. *See* 1984 Iowa Acts ch. 1293, § 3 (codified as amended at Iowa Code § 668.3 (1986))). In *Goetzman,* we considered both "current 'social and economic customs' and modern 'conceptions of right and justice.'" *Id.* (quoting *Hoffman v. Jones,* 280 So.2d 431, 436 (Fla.1973)). In so doing, we concluded the adoption of comparative fault was necessary to ameliorate the harshness of the "all or nothing" approach of contributory negligence and to achieve fairness for all involved parties. *Goetzman,* 327 N.W.2d at 749. To use the status of the plaintiff to determine duty was wrong then and is wrong now.

The common law enforced such distinctions with land because, at that time, land was considered predominant over life. Using status as the litmus test in premises liability was perceived as necessary because landowners were not able to inspect and make safe distant property. And while these distinctions "may have provided a just disposition in England when the culture was deeply rooted to the land and tied to a heritage of feudalism, we must consider whether the distinctions do justice in an industrialized urban society." *Wal–Mart Stores, Inc. v. Garza,* 27 S.W.3d 64, 69 (Tex.Ct.App.2000). Unlike feudal England, jurors today are more likely to be landowners and able to recognize the limitations a landowner faces in protecting his or her property. Tab J. Keener, *Can the Submission of a Premises Liability Case Be Simplified?* 28 Tex. Tech. L.Rev. 1161, 1172 (1997).

By eliminating status as the determinative factor, we would not eliminate it altogether from our consideration of whether a particular landowner satisfied the appropriate standard of care. Rather, we should maintain the traditional classifica-tions of licensee, invitee, and trespasser as but only one factor in a multi-step analysis of premises liability.

Moreover, abolishing this trichotomy would not leave the judge or jury without standards upon which to judge a landowner's conduct. The principle I now advocate to apply in premises liability actions has long been the standard governing personal negligence. The trier-of-fact would have the opportunity to weigh various factors to determine the requisite duty of care under the particular circumstances of each case. Among the factors to consider are:

1) foreseeability or possibility of harm;

2) purpose for which the entrant entered the premises;

3) time, manner, and circumstances under which the entrant entered the premises;

4) use to which the premises are put or are expected to be put;

5) reasonableness of the inspection, repair, or warning;

6) opportunity and ease of repair or correction or giving of the warning; and

7) burden on the land occupier and/or community in terms of inconvenience or cost in providing adequate protection.

*Sheets v. Ritt, Ritt & Ritt, Inc.,* 581 N.W.2d 602, 606 (Iowa 1998). The majority is concerned with the interests of the landowner above all else. However, the analysis above does not favor the trespasser over the landowner. In fact, this analytic framework functions as a restriction on a landowner's liability as it forces the trier-of-fact to consider foreseeability of the harm and the reason for and circumstances surrounding the trespasser's entry. Furthermore, to characterize a general duty of ordinary care as a "one-rule-fits-all approach" minimizes the balance

the duty of reasonable care strives to achieve. Such a label is a more fitting description of the majority's approach where they could not imagine a situation in which a landowner owed a duty of care to someone unexpectedly finding herself in a hazardous situation.

The majority claims the duty of care a landowner owes a trespasser under our present system "strikes an appropriate balance between the interests of the landowner and the trespasser." Despite references to this so-called "reasonable balance," the majority opinion is devoid of any discussion of what consideration we may give to the trespasser under a common law rule. Perhaps this discussion is missing because the rigid classification system does not permit balancing of competing interests. It is an examination of only one interest—the interest of the landowner. It does not consider the interests of a trespasser under any circumstances. There is no room for balance in a test that merely determines a land entrant's status as a trespasser and accordingly concludes the landowner owed the trespasser the narrow duty of care not to injure the trespasser maliciously or deliberately.

Surely the majority can imagine circumstances under which even a trespasser is owed a modicum of care. On the other hand, it is not difficult to conjure up extreme horror stories where it would be wholly unjust to impose any liability on the landowner. But in doing so, we ignore the vast gray area of cases where, despite the landowner's negligent or even reckless conduct, we impose effectively no duty of care upon the landowner. The analysis I advocate takes into consideration a multitude of factors allowing the trier-of-fact to arrive at the most just resolution, especially where the facts are close regarding the entrant's technical status. To satisfy the overall duty of care standard, a landowner is not required to eliminate any and all dangers on the property. Rather, the ordinary standard of care is to take steps to avoid only foreseeable, unreasonable risks. Herein lies the true balance, as the landowner is not required to do anything more than to act with reasonable care under the circumstances.